STATE OF NORTH CAROLINA v. KEITH BUTLER

No. 653A01

(Filed 16 August 2002)

**Drugs— trafficking in cocaine—sufficiency of evidence—constructive possession**

The trial court did not err by denying defendant's motion to dismiss the charges of trafficking in cocaine based on plenary evidence of additional incriminating circumstances tending to establish defendant's constructive possession of cocaine found in a taxi under the driver's seat approximately twelve minutes after defendant exited the taxi, including the facts that: (1) defendant, carrying a single small bag, got off a bus that had originated in a

city deemed to be a source for narcotics; (2) upon seeing narcotic officers defendant began to act suspicious by walking very briskly through the bus terminal after making eye contact with the officers, defendant repeatedly glanced back at the officers who had begun to follow him, and defendant again paused to look back at the officers before hurrying into a taxi cab parked outside the terminal; (3) defendant urged the cab driver to leave immediately, and defendant appeared nervous and fidgety when the officers approached the cab to ask defendant to step out with his bag; (4) the cab driver testified that he felt defendant struggling and pushing the back of the cab driver's seat, and the driver testified that defendant was the only person who had been in a position to place the package in that location; and (5) defendant led the officers away from the vehicle and to the terminal doors in order to be questioned, and defendant made no effort to obtain another cab despite the urgency with which he had previously tried to depart the terminal.

Justice ORR dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 147 N.C. App. 1, 556 S.E.2d 304 (2001), finding no error in judgments entered 29 October 1998 by Jones (Abraham Penn), J., in Superior Court, Wake County. The case was calendared for argument in the Supreme Court 17 April 2002, but was determined on the briefs without oral argument upon defendant's motion for the Court to decide the case pursuant to N.C. R. App. P. 30(f)(1).

*Roy Cooper, Attorney General, by Claud R. Whitener, III, Assistant Attorney General, for the State.*

*John T. Hall for defendant-appellant.*

BUTTERFIELD, Justice.

Defendant Keith Butler was indicted on 7 July 1998 for trafficking in cocaine by transportation of twenty-eight grams or more but less than two hundred grams of cocaine and trafficking in cocaine by possession of twenty-eight grams or more but less than two hundred grams of cocaine. The trial court consolidated the charges for trial, and the jury found defendant guilty of both offenses. Thereupon, the trial court sentenced defendant to two consecutive terms of thirty-five to forty-two months' imprisonment. From the judgments entered

upon his convictions, defendant appealed to the Court of Appeals, assigning error, *inter alia*, to the trial court's failure to dismiss the charges for lack of sufficient evidence. The Court of Appeals, in a split decision, affirmed the trial court. Defendant appeals to this Court as of right based on the dissent.

At trial, the State presented evidence tending to show the following facts. Detectives D.C. Murphy and K.A. Halsaber, who were assigned to the Interdiction Unit of the Drug Task Force of the Raleigh Police Department, were surveilling the Greyhound Bus terminal on Jones Street on the morning of 20 January 1998. The objective of the Interdiction Unit, according to Murphy's testimony, was to intercept drugs entering Raleigh from "source" cities, those cities where drugs are known to be prevalent. On this occasion, the officers were watching the passengers of a bus that had just arrived from New York City, a source city, and that had as its final destination Miami Beach, which is also a source city. Defendant exited the bus carrying only a small duffel bag and quickly drew the attention of the officers when he began to behave in a suspicious manner. Murphy testified that defendant stopped when he reached the entrance to the terminal, turned around to look at the officers, paused momentarily, and then proceeded to walk "very briskly" through the terminal. The officers followed, and as defendant pressed his way to the exit, he looked back several times, making eye contact with the officers. Murphy stated that when defendant reached the exit, he hesitated, glanced back at the officers again, and then hurried through the door.

Christopher Thomas, a driver for the Checker Cab Company, was parked outside the terminal approximately two feet from the exit. Thomas testified that defendant hopped into the backseat of the cab directly behind the driver's seat; slammed the door; and yelled, "let's go, let's go, let's go." Before Thomas could drive off, however, the officers exited the terminal and signaled him not to move. The officers then identified themselves to defendant and asked him to get out of the vehicle with his bag, which was resting on the seat beside him. Murphy described defendant's demeanor at that time as "very nervous" and "fidgety." Further, Murphy noted that defendant was "very slow" to exit the vehicle and that he bent down and reached toward the driver's seat prior to opening the door. Murphy testified that he and Halsaber were able to "see just barely the top of [defendant's] head and part of his shoulder." Defendant's hands, according to Murphy, were hidden from the officers' view. Regarding defendant's movements, Thomas testified that he felt defendant "struggling"

behind him and "pushing the back of [Thomas'] seat" before opening the door.

Upon exiting the cab, and without being instructed to do so, defendant walked over to the front doors of the terminal, drawing the officers away from the vehicle. Murphy testified that this was unusual, in that the officers would typically begin such an interview standing right next to the cab so that the subject of the interview could get back into the cab and leave if the officers saw no need for further questioning.

While standing outside the terminal doors, the officers briefly questioned defendant concerning his name, point of origin, and destination. They then asked defendant to accompany them to a private room inside the terminal and, with defendant's permission, conducted a pat down of his person and a search of his duffel bag. Finding no contraband in defendant's possession, the officers told defendant he was free to leave, which he did. Rather than attempt to secure another taxicab, however, defendant left the terminal on foot.

Meanwhile, Thomas picked up another fare, a man Thomas recognized from having previously provided him taxi services. Thomas testified that the man entered the cab through the rear passenger door and occupied the rear passenger seat throughout the trip. Thomas said that he drove the man approximately six or seven blocks to the Wake County Public Safety Building. Additionally, Thomas stated that at no time during the ride did he observe or otherwise detect the man make any movements toward the driver's side of the cab. After dropping the man at his destination, Thomas returned directly to the bus terminal and did not pick up any other fares along the way. The entire trip, according to Thomas, lasted approximately ten minutes.

When Thomas returned to the terminal, Detective Murphy approached and asked to search his cab. Thomas consented, and Murphy discovered a package under the driver's seat, wrapped in a white napkin and secured with Scotch tape. The package contained a white powdery substance later identified as cocaine. Murphy asked Thomas when he had last cleaned the cab. Thomas stated that he had cleaned and vacuumed the cab prior to beginning his shift and that defendant was his first fare of the morning. According to Thomas, the cocaine had not been under the driver's seat when defendant entered the cab.

Shortly thereafter, the officers found defendant walking north-bound on Glenwood Avenue, approximately ten to twelve blocks away from the terminal. They arrested defendant, and a search of his person revealed a small sum of money, a pager, and a cell phone.

By his sole assignment of error, defendant contends that the Court of Appeals erred in affirming the trial court's denial of his motion to dismiss the charges of trafficking in cocaine. Defendant argues that the evidence was insufficient to demonstrate beyond a reasonable doubt that he was in either actual or constructive posses-sion of any contraband substance. For the reasons that follow, we must disagree.

When considering a motion to dismiss, the trial court's inquiry is limited to a determination of "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). To be substantial, the evidence need not be irrefutable or uncontroverted; it need only be such as would satisfy a reasonable mind as being "adequate to support a conclu-sion." *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). For purposes of a motion to dismiss, evidence is deemed less than substantial if it raises no more than mere suspicion or conjecture as to the defendant's guilt. *State v. Wilson*, 354 N.C. 493, 521, 556 S.E.2d 272, 290 (2001).

In ruling on a motion to dismiss, the trial court must examine the evidence in the light most beneficial to the State, drawing all reason-able inferences therefrom in favor of the State's case. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 256 (2002). "The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility." *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001), *cert. denied*, —— U.S. ——, 153 L. Ed. 2d 162 (2002). "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). This is true, even if the evidence likewise permits a reasonable inference of the defendant's innocence. *State v. Grigsby*, 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000).

With regard to possession of contraband, this Court recently set forth the applicable law as follows:

**STATE v. BUTLER**

[356 N.C. 141 (2002)]

"[I]n a prosecution for possession of contraband materials, the prosecution is not required to prove actual physical possession of the materials." *State v. Perry*, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986). Proof of nonexclusive, constructive possession is sufficient. *Id.* Constructive possession exists when the defendant, "while not having actual possession, . . . has the intent and capability to maintain control and dominion over" the narcotics. *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986). "Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972). "However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred." [*State v.*] *Davis*, 325 N.C. [693,] 697, 386 S.E.2d [187,] 190 [(1989)]; *see also* [*State v.*] *Brown*, 310 N.C. [563,] 569, 313 S.E.2d [585,] 588-89 [(1984)].

*State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270-71 (2001).

In *Matias*, a majority of this Court concluded that the State's evidence was sufficient to establish the defendant's constructive possession of cocaine and that the trial court properly denied the defendant's motion to dismiss the charge. The evidence showed that while patrolling an apartment complex, two law enforcement officers detected an odor of marijuana emanating from a vehicle in the parking lot. The officers placed the driver under arrest and then instructed the remaining three occupants to get out of the vehicle. During a search of the vehicle, the officers discovered a clear plastic bag that contained marijuana and " 'a small piece of tin foil that was kind of balled up.' " *Id.* at 551, 556 S.E.2d at 270. Inside the foil was cocaine. The officers found the bag between the seat pads of the right rear seat, where the defendant had been sitting. According to the testimony of the officers, the "defendant was the only person who could have placed the plastic bag in the space between the seat pads." *Id.* While conducting the search, the officers also discovered rolling papers and observed marijuana seeds in the carpeting.

In concluding that there were additional incriminating circumstances sufficient to support a finding that the defendant was in constructive possession of the cocaine, the majority relied on the following: (i) that the "defendant had been in the car approximately

twenty minutes," (ii) that "there was an odor of marijuana in the car," (iii) that there were "marijuana seeds and rolling papers inside the car," (iv) that the package of narcotics was discovered between the pads of the defendant's seat, and (v) that there was testimony from an officer that the "defendant was the only person in the car who could have shoved the package containing the cocaine into the crease of the car seat." *Id.* at 552, 556 S.E.2d at 271. The majority held that, in light of this evidence, "a juror could reasonably determine defendant knew *drugs* were in the car." *Id.* (emphasis added).

The dissent, however, quarreled with the notion that the evidence supported a reasonable inference that the defendant knew of the presence of the cocaine. Unlike the marijuana, the dissent reasoned, the cocaine was odorless, and there was no conspicuous evidence of its use inside the vehicle. Therefore, the dissent took the position that the only incriminating circumstance tending to support the defendant's constructive possession of the cocaine was his proximity to where the package was hidden. According to the dissent, this evidence was insufficient to sustain the defendant's conviction for possession of cocaine.

In the case *sub judice*, the additional incriminating circumstances tending to establish defendant's constructive possession of the cocaine were plenary. Taken in the light most favorable to the State and drawing all reasonable inferences in favor of the State, the evidence showed that defendant, carrying a single small bag, alighted from a bus that had originated in New York City, a city deemed to be a source for narcotics. Upon seeing the narcotics officers, defendant began to act suspiciously. According to Detective Murphy, defendant paused, made eye contact with the officers, and then proceeded to walk "very briskly" through the terminal. As he did so, defendant repeatedly glanced back at the officers, who had begun to follow him. When defendant reached the front exit, he paused again to look back at the officers before hurrying into Thomas' cab, which was parked outside the terminal. Defendant slammed the door and urged Thomas to leave immediately, shouting, "let's go, let's go, let's go."

Further, Murphy testified that defendant appeared "very nervous" and "fidgety" when the officers approached the cab and asked him to step out with his bag. Murphy stated that defendant was "very slow" to get out of the cab and that, prior to opening the door, he bent over and reached toward the driver's seat. While in this position, defendant's hands were concealed from the officers' view. Thomas testified that he felt defendant "struggling" behind him and "pushing the back

of [Thomas'] seat." The package of cocaine was discovered under the driver's seat approximately twelve minutes later, and according to Thomas, defendant was the only person who had been in a position to place the package in that location.

The evidence further tended to show that defendant led the officers away from the vehicle and to the terminal doors in order to be questioned. Additionally, when the officers had finished their questioning and had allowed defendant to leave, he did so on foot. Despite the urgency with which he had previously tried to depart the terminal, defendant made no effort to obtain another cab, even though several available cabs were parked outside the terminal. From this evidence, a juror could reasonably infer that defendant possessed the cocaine when he exited the bus and that he stashed it under the driver's seat of the cab when the officers approached him for questioning. Thus, we conclude that there were sufficient indicia of defendant's constructive possession to warrant submission of the trafficking charges to the jury.

Defendant concedes in his brief that "[his] actions, with no more showing, [were] arguably consistent with being guilty of the crimes with which he was charged." He contends, however, that additional facts show his actions also to be "consistent with those of a totally innocent bus passenger." Specifically, defendant argues that his unusual behavior—his nervousness and the slow, deliberate manner in which he exited the cab—can be explained by the fact that he had recently been shot in the buttocks. Although defendant was certainly free to argue this theory to the jury, these additional facts make the State's evidence no less sufficient to send to the jury. Accordingly, we hold that the trial court properly denied defendant's motion to dismiss and that the Court of Appeals properly found no error in the trial court's ruling.

For the foregoing reasons, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice ORR dissenting.

In *State v. Matias*, I joined Justice Butterfield's dissent on the grounds that the evidence was insufficient to support sending the case to the jury based upon "constructive possession" of the discovered drugs. There, the majority concluded that "defendant was the

only person in the car who could have shoved . . . the cocaine into the crease of the car seat." 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001).

The case before us now fails to meet even the minimal standard established by the majority in *Matias*, and I therefore respectfully dissent and lament Justice Butterfield's change of view. In this case, there are at least two other individuals who had an equally good, if not better, opportunity to place the drugs under the driver's seat in the taxi. First, and obviously foremost, was the taxi driver who was in possession and control of the taxi throughout the relevant time frame. The other was the passenger who drove away in the taxi after defendant had exited the vehicle. I note, too, that defendant was in the vehicle for less than a minute, a considerably shorter period than either of the other two occupants, and that he was never alone.

The majority places great weight on the "suspicious" facts surrounding defendant's arrival from New York City, e.g., his nervousness and the like. While those circumstances may serve to demonstrate that the stop and subsequent search were reasonable police actions, they do not satisfy the evidentiary criteria necessary to establish constructive drug possession which, in the absence of a showing of exclusive control, requires the State to produce other incriminating evidence tying a defendant to the discovered contraband. *See State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989). Heretofore, this Court has not addressed whether suspicious conduct that may justify a search may also serve as sufficient "other incriminating evidence" for purposes of establishing constructive possession of drugs in situations where a suspect had neither an ownership interest in the premises nor exclusive control of such premises. However, other courts have considered suspicious conduct in the context of constructive possession, with the most compelling case being decided by the Virginia Supreme Court:

> The mere finding of the [contraband] upon the premises occupied by [the accused] and another created no presumption of law that [the accused] was in the possession of it . . . . There was no positive evidence of the possession of it by him. The circumstances were suspicious, to say the least; but circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.

*Powers v. Commonwealth*, 182 Va. 669, 675-76, 30 S.E.2d 22, 25 (1944) (holding that mere suspicions regarding the defendant's conduct failed as a matter of law to link him to illegal substances that were discovered in a place not under his exclusive control). Thus, in step with the Virginia Supreme Court's well-reasoned view, I would hold that defendant's purported suspicious conduct, without more, proves insufficient as support for an inference of constructive possession. As a result, I would additionally conclude that such evidence is inadequate as a matter of law for purposes of validating defendant's convictions for offenses involving possession of the illegal drugs found in the taxi.

Finally, while the majority makes much of defendant's movements getting in and out of the taxi, it pays little heed at all to a plausible explanation for defendant's apparent physical struggles: shortly before the incident in question, defendant had been the victim of a robbery, during which he was shot in the buttocks. It is also of some interest to note that the undercover agents did not ask the taxi driver to allow them to inspect the car at the time they detained defendant, opting instead to permit the taxi to pick up another fare and leave the scene. Couple these circumstances with the fact that no other drugs, or even drug residue, were found on defendant, and this case appears even weaker than the one mounted against the defendant in *Matias*. I therefore must disagree with the majority.