IN THE SUPREME COURT OF NORTH CAROLINA

No. 57PA12-2

FILED 8 NOVEMBER 2013

STATE OF NORTH CAROLINA

v.

RONALD PRINCEGERALD COX

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 731 S.E.2d 438 (2012), reversing in part and finding no error in part in a judgment entered on 15 September 2010 by Judge Charles H. Henry in Superior Court, Wayne County, and remanding for resentencing. Heard in the Supreme Court on 3 September 2013.

*Roy Cooper, Attorney General, by Joseph L. Hyde, Assistant Attorney General, for the State-appellant.*

*Irving Joyner for defendant-appellee.*

MARTIN, Justice.

Defendant, a convicted felon, confessed to possession of a firearm recovered by Goldsboro police officers ten to twelve feet from a car in which he was a passenger. Because defendant's confession is supported by substantial independent evidence tending to establish its trustworthiness, the *corpus delicti* rule is satisfied. We reverse the decision of the Court of Appeals.

The Goldsboro Police Department conducted a DWI checkpoint from 11:00 p.m. on 30 October until 3:00 a.m. on 31 October 2009 at the intersection of Central Heights Road and Highway 13 North. The Department posted notice signs and illuminated the area with mobile lighting units. Officer William VanLenten was assigned to watch for vehicles attempting to avoid the checkpoint. At approximately 1:35 a.m., Officer VanLenten observed a Chevrolet Impala sedan traveling north toward the checkpoint. The Impala abruptly slowed down and appeared to Officer VanLenten "like it was going to turn west" onto another road. Instead, the Impala continued its path north and turned into the driveway of a residence. Officer VanLenten was familiar with this residence and had never seen the Impala there. As he followed in his patrol vehicle to investigate, he observed the driver jump from the Impala and flee to the back of the property. Three other men remained in the car: defendant in the front passenger seat, James Darden in the rear seat behind defendant, and Deangelo Cox in the rear seat behind the driver's seat. The driver's door was open and all the windows were down. Officer VanLenten ordered the passengers to show their hands. The backseat passengers, Darden and Deangelo Cox, complied, but defendant ignored the command, rolling a marijuana cigarette instead.

As Officer Tyler McNeill arrived to provide backup, the driver of the Impala, Brian White, returned to the scene with his hands up. Officer McNeill removed James Darden from the car and found a firearm on the car's floor at the foot of his

seat. Deangelo Cox and defendant were then removed from the car. In White's flight path through the yard, the officers found a firearm loaded with five rounds of ammunition and a clear plastic bag containing several smaller plastic bags of marijuana. The firearm was located within ten to twelve feet of the driver's side of the car. The night was cool and the grass was wet with condensation, but the firearm was dry and warm. Within three feet of the firearm the officers also found a small bag of individually wrapped marijuana. Darden claimed ownership of the firearm found at the foot of his seat, and Officer NcNeill took him into custody. No one claimed ownership of the firearm and marijuana that were found outside the car. Officer VanLenten checked the serial number of the unclaimed firearm and learned it had been reported stolen from Sumter, Georgia. He arrested White, Deangelo Cox, and defendant.

After the Impala's four occupants had been transported to the Wayne County Magistrate's Office, they discussed among themselves their desire that Deangelo Cox, who was defendant's younger brother, not be charged. Officer VanLenten reiterated that if none of them took ownership of the marijuana and stolen firearm, then all of them would be charged. The group asked Officer VanLenten whether Deangelo Cox would be released "if they said who the items belonged to." After Officer VanLenten gave them their *Miranda* warnings, White stated the marijuana belonged to him and defendant stated the firearm belonged to him. The men refused to make written statements. Deangelo Cox was released from police

custody and was not charged. Defendant was indicted for possession of a stolen firearm, possession of a controlled substance, and possession of a firearm by a felon.

Before defendant's case was called for trial, the State dismissed the charge of possession of a stolen firearm. At trial, Officers VanLenten and McNeill testified for the State. The trial court admitted a certified copy of defendant's prior felony conviction. At the conclusion of the State's case in chief, defense counsel moved to dismiss the two remaining charges. The trial court denied these motions. Brian White, the Impala's driver, was the sole witness for the defense. He testified that he was present with defendant the entire time they were held at the magistrate's office and never heard defendant admit the stolen firearm belonged to him. He also denied claiming ownership of the marijuana found in the grass. At the close of the evidence, the trial court again denied the defense's motions to dismiss the charges. The jury found defendant guilty of possession of a controlled substance and possession of a firearm by a felon. The trial court consolidated the offenses for judgment and sentenced defendant to a term of twelve to fifteen months of imprisonment.

On appeal, the Court of Appeals held the trial court erred by denying defendant's motion to dismiss the charge of possession of a firearm by a felon. *State v. Cox*, ___ N.C. App. ___, ___, 721 S.E.2d 346, 348 (2012). The court stated: "[T]he entirety of the confession, as conveyed by Officer VanLenten, was that defendant

owned the gun. Thus, any corroborative evidence under either [the traditional or *Parker* articulation of the *corpus delicti*] test would have to tend to establish that defendant owned or possessed the gun." *Id.* at ___, 721 S.E.2d at 350. Concluding that "[t]he State did not present such evidence" and "the only evidence that defendant possessed the gun was the extrajudicial confession," the Court of Appeals reversed the trial court's denial of defendant's motion to dismiss that charge. *Id.* at ___, 721 S.E.2d at 350. As for the second issue raised on appeal, the court found no error in defendant's conviction for possession of marijuana. *Id.* at ___, 721 S.E.2d at 350.

On 13 June 2012, we allowed the State's petition for discretionary review for the limited purpose of remanding to the Court of Appeals for reconsideration in light of our decision in *State v. Sweat*, 366 N.C. 79, 727 S.E.2d 691 (2012). *State v. Cox*, 366 N.C. 211, 742 S.E.2d 189 (2012). Upon reconsideration, the Court of Appeals upheld its original decision. *State v. Cox*, ___ N.C. App. ___, ___, 731 S.E.2d 438, 443 (2012). The State again petitioned this Court for discretionary review. We allowed the State's petition on 24 January 2013.

The sole issue before us is whether the Court of Appeals erred by reversing the trial court's denial of defendant's motion to dismiss the charge of possession of a firearm by a felon. "Upon a defendant's motion to dismiss for insufficient evidence, the question for the Court is whether there is substantial evidence (1) of each

essential element of the offense charged . . . and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *Sweat*, 366 N.C. at 84, 727 S.E.2d at 695 (alteration in original) (citations and internal quotation marks omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (citations and internal quotation marks omitted). "The evidence is to be considered in the light most favorable to the State, and the State is entitled to . . . every reasonable inference to be drawn therefrom." *Sweat*, 366 N.C. at 84, 727 S.E.2d at 695 (alteration in original) (citations and internal quotation marks omitted). "Whether the State presented substantial evidence of each essential element is a question of law." *State v. Phillips*, 365 N.C. 103, 133-34, 711 S.E.2d 122, 144 (2011) (citation omitted), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1541 (2012). "We review questions of law de novo." *State v. Khan*, ___ N.C. ___, ___, 738 S.E.2d 167, 171 (2013) (citation omitted). Accordingly, we conduct a de novo review to determine whether there was substantial evidence that defendant was previously convicted of a felony and subsequently possessed a firearm. *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347-48 (2012) (citing N.C.G.S. § 14-415.1(a) (2011)).

A confession can be powerful evidence against the accused. *See, e.g.*, *Premo v. Moore*, ___ U.S. ___, ___, 131 S. Ct. 733, 744 (2011). But we have long held that "an extrajudicial confession, standing alone, is not sufficient to sustain a conviction of a crime." *State v. Parker*, 315 N.C. 222, 229, 337 S.E.2d 487, 491 (1985). When the

State relies upon a defendant's extrajudicial confession, we apply the *corpus delicti* rule "to guard against the possibility that a defendant will be convicted of a crime that has not been committed." *Id.* at 235, 337 S.E.2d at 494. This inquiry is preliminary to consideration of whether the State presented sufficient evidence to survive the motion to dismiss.

The *corpus delicti* rule is historically grounded in three policy justifications: (1) to "protect[ ] against those shocking situations in which alleged murder victims turn up alive after their accused killer has been convicted and perhaps executed"; (2) to "ensure[ ] that confessions that are erroneously reported or construed, involuntarily made, mistaken as to law or fact, or falsely volunteered by an insane or mentally disturbed individual cannot be used to falsely convict a defendant"; and (3) "to promote good law enforcement practices [by] requir[ing] thorough investigations of alleged crimes to ensure that justice is achieved and the innocent are vindicated." *State v. Smith*, 362 N.C. 583, 591-92, 669 S.E.2d 299, 305 (2008) (citations and internal quotation marks omitted).

Traditionally, our *corpus delicti* rule has required the State to present corroborative evidence, independent of the defendant's confession, tending to show that "(a) the injury or harm constituting the crime occurred [and] (b) this injury or harm was done in a criminal manner." *Id.* at 589, 669 S.E.2d at 304 (citation omitted); *see also Parker*, 315 N.C. at 231, 337 S.E.2d at 492. This traditional

approach requires that the independent evidence " 'touch[ ] or concern[ ] the *corpus delicti*' "—literally, the body of the crime, such as the dead body in a murder case. *Parker*, 315 N.C. at 229, 337 S.E.2d at 491 (citation omitted).

When applying the *corpus delicti* rule, it is fundamental that the corroborative evidence "need not . . . in any manner tend to show that the defendant was the guilty party." 1 Kenneth S. Broun et al., *McCormick on Evidence* § 146, at 810 (7th ed. 2013) [hereinafter 1 *McCormick on Evidence*]. Instead, the rule requires the State to present evidence tending to show that the crime in question occurred. The rule does not require the State to logically exclude every possibility that the defendant did not commit the crime. Thus, if the State presents evidence tending to establish that the injury or harm constituting the crime occurred and was caused by criminal activity, then the *corpus delicti* rule is satisfied and the State may use the defendant's confession to prove his identity as the perpetrator. *See, e.g.*, *State v. Trexler*, 316 N.C. 528, 533, 342 S.E.2d 878, 881 (1986).

In *State v. Parker*, acknowledging shortcomings and criticisms of the traditional *corpus delicti* rule, 315 N.C. at 231-35, 337 S.E.2d at 492-95, we adopted a rule for non-capital cases "expand[ing] the type of corroboration which may be sufficient to establish the trustworthiness of the confession," *Trexler*, 316 N.C. at 532, 342 S.E.2d at 880.

> [W]hen the State relies upon the defendant's confession to
> obtain a conviction, it is no longer necessary that there be

independent proof tending to establish the *corpus delicti* of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime.

We wish to emphasize, however, that when independent proof of loss or injury is lacking, there must be *strong* corroboration of *essential* facts and circumstances embraced in the defendant's confession. Corroboration of insignificant facts or those unrelated to the commission of the crime will not suffice. We emphasize this point because although we have relaxed our corroboration rule somewhat, we remain advertent to the reason for its existence, that is, to protect against convictions for crimes that have not in fact occurred.

*Parker*, 315 N.C. at 236, 337 S.E.2d at 495; *see also Sweat*, 366 N.C. at 82, 727 S.E.2d at 694; *Trexler*, 316 N.C. at 532, 342 S.E.2d at 880. This rule, known as the *Parker* rule, applies when independent proof of the commission of the crime—that is, the *corpus delicti*—is lacking but there is substantial independent evidence tending to establish the trustworthiness of the defendant's extrajudicial confession. *Trexler*, 316 N.C. at 532, 342 S.E.2d at 880. As we later clarified, we did not abandon the traditional rule when we adopted the rule in *Parker*. *Id*. Rather, the State may now satisfy the *corpus delicti* rule under the traditional formulation or under the *Parker* formulation. *Id*.; *see also State v. Sloan*, 316 N.C. 714, 725, 343 S.E.2d 527, 534 (1986).

The Court in *Parker* noted that application of the traditional *corpus delicti* rule "is nearly impossible in those instances where the defendant has been charged

-9-

with a crime that does not involve a tangible *corpus delicti* such as is present in homicide (the dead body), arson (the burned building) and robbery (missing property)." 315 N.C. at 232, 337 S.E.2d at 493. For many statutory offenses, "[s]imply identifying the elements of the *corpus delicti* . . . provides fertile ground for dispute." 1 *McCormick on Evidence* § 147, at 815. These difficulties provided, in part, the Court's motivation for adopting the more flexible *Parker* rule. Although the gun recovered by the officers may have provided independent evidence of the tangible *corpus delicti* under the traditional rule, in light of the above considerations, we apply the *Parker* rule. Accordingly, we must determine whether defendant's "confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show [he] had the opportunity to commit the crime." *Parker*, 315 N.C. at 236, 337 S.E.2d at 495.

The State's evidence tended to show that the Chevrolet Impala attempted to avoid a DWI checkpoint by pulling into a residential driveway. The driver fled on foot as Officer VanLenten's patrol car approached. Officer VanLenten observed that defendant was one of three remaining passengers in the car. Officers thereafter found the firearm in question within ten to twelve feet of the driver's open door. Even though the night was cool and the grass was wet with condensation, the firearm was dry and warm, indicating that it came from inside the car. Near the firearm officers found marijuana packaged in a manner consistent with packaging for sale. The officers also found a firearm at the feet of one of the other passengers.

These are not "insignificant facts" or facts "unrelated to the commission of the crime." *Id.* Rather, these facts strongly corroborate "*essential* facts and circumstances embraced in [ ] defendant's confession." *Id.* They link defendant temporally and spatially to the firearm. Thus, the circumstances preceding defendant's confession—circumstances that were observed by law enforcement officers—establish the trustworthiness of the confession.

Furthermore, defendant makes no claim that his confession was obtained by deception or coercion, or was a result of physical or mental infirmity. In fact, before confessing, defendant was advised of his *Miranda* rights and signed a Waiver of Rights form that stated:

> I have read the statement of my [*Miranda*] rights above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer present during questioning. I understand and know what I am doing. No promises or threats have been made against me and no pressure of any kind has been used against me by any officer or any other person.

The evidence presented at trial is consistent with these statements. As Officer McNeill testified, while the officers were completing their paperwork, the four men discussed among themselves how they might prevent defendant's younger brother from being charged. Officer VanLenten also testified that he observed the four men's conversation and noted their concern that defendant's younger brother might be charged. Defendant confessed only after Officer VanLenten informed him of his *Miranda* rights. The trustworthiness of defendant's confession is thus further

-11-

bolstered by the evidence that defendant made a voluntary decision to confess. For the foregoing reasons, defendant's confession is "supported by substantial independent evidence tending to establish its trustworthiness." *Id.* The State has therefore met its burden under the *Parker* articulation of the *corpus delicti* rule.

The Court of Appeals erred when it reasoned: "[T]he entirety of the confession, as conveyed by Officer VanLenten, was that defendant owned the gun. Thus, any corroborative evidence under either [*corpus delicti*] test would have to tend to establish that defendant owned or possessed the gun." *Cox*, ___ N.C. App. at ___, 731 S.E.2d at 443. Even though defendant admitted the gun belonged to him, the Court of Appeals conducted a sufficiency analysis that effectively disregarded his confession—evaluating whether the State's other evidence excluded the possibility that the gun belonged to any of the other three occupants of the Impala. This analysis is inconsistent with the *corpus delicti* doctrine, which does not require that the corroborative evidence "in any manner tend to show that the defendant was the guilty party." 1 *McCormick on Evidence* § 146, at 810. Rather, defendant's confession provides the proof that he committed the crime.

We apply the *corpus delicti* rule in light of the standard of review for motions to dismiss for insufficient evidence, which requires the reviewing court to construe the evidence "in the light most favorable to the State." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Under that standard, evidentiary "contradictions

and discrepancies are for the jury to resolve and do not warrant dismissal." *Id.* If a reasonable inference of the defendant's guilt may be drawn from the evidence, dismissal is improper, "even if the evidence likewise permits a reasonable inference of the defendant's innocence." *State v. Butler*, 356 N.C. 141, 567 S.E.2d 137 (2002). Our opinion in *State v. Butler* is illustrative of these axiomatic principles. In that case, controlled substances were discovered in a taxicab in which the defendant had been a passenger. *Id.* at 144, 567 S.E.2d at 139. Unlike defendant in the present case, the defendant in *Butler* made no confession. Applying the "light most favorable to the State" standard of review, we held there was sufficient evidence that the defendant constructively possessed the controlled substances even though two other individuals had the opportunity to place the drugs there. *See id.* at 144-45, 567 S.E.2d at 139. We did not require the State to exclude the possibility that the controlled substances belonged to the two other individuals. In that case, the defendant did not confess. In the case before us, however, defendant did confess to possession of the firearm, presenting the jury with evidence of his guilt. Armed with defendant's confession, the State was not required to submit alternative evidence proving defendant's identity as the perpetrator.

Because the *corpus delicti* rule is satisfied, defendant's confession provides substantial evidence that he possessed the firearm. Taken with the undisputed evidence of defendant's prior felony conviction, the evidence was sufficient for the State to survive defendant's motion to dismiss the charge of possession of a firearm

by a felon. *See Bradshaw*, 366 N.C. at 93, 728 S.E.2d at 347-48 (citing N.C.G.S. § 14-415.1(a) (2011)). Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.