IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-296

No. COA21-493

Filed 3 May 2022

Randolph County, No. 18-CRS-52222

STATE OF NORTH CAROLINA

v.

STAMEY JASON DARR

Appeal by defendant from judgment entered 19 February 2021 by Judge V. Bradford Long in Randolph County Superior Court. Heard in the Court of Appeals 26 January 2022.

> *NC Prisoner Legal Services, Inc., by Marilyn G. Ozer, for Defendant-Appellant.*
>
> *Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L. Hyde, for the State.*

CARPENTER, Judge.

¶ 1         Stamey Jason Darr ("Defendant") was indicted on 1 October 2018 for statutory rape and forcible rape of the victim ("Victim"). On 19 February 2021, the trial court convicted Defendant of statutory rape, and he appealed. After careful review, we find no error.

## I. Factual & Procedural Background

¶ 2         Defendant was born on 20 May 1982, and Victim was born on 30 August 2001. Victim testified Defendant first had vaginal intercourse with her in 2016; Victim was

fourteen years old, and Defendant was thirty-three years old. Victim testified sexual contact between her and Defendant was consistent and continued through 2018. The indictment listed 2017 as the date of the vaginal intercourse. In August 2018, Victim told her high school guidance counselor about her sexual contacts with Defendant, and the counselor notified law enforcement officers.

¶ 3        Randolph County Sheriff's Detective Sibbett requested Defendant come to the Sheriff's Office to discuss a "DSS referral," which concerned an unrelated shooting on Defendant's property, and Defendant did so. Defendant was not formally arrested or restrained when he arrived. Defendant was interrogated by Detectives Trogden and Sibbett on the topic of the "DSS referral." During interrogation, Defendant was allowed to leave to use the restroom and make phone calls. After questioning regarding the shooting incident ceased, the interrogation shifted to Defendant's relationship with Victim.

¶ 4        Detective Trogden assured Defendant he was not under arrest and told Defendant he could leave. The detectives questioned Defendant about Victim's allegations and played a recording of Defendant speaking with Victim. After hearing his recorded conversation with Victim, Defendant told the detectives he had engaged in vaginal intercourse with Victim multiple times in 2017 and 2018.

¶ 5        After Defendant's confession, the detectives left the room, and a Department of Social Services ("DSS") employee entered the room to speak with Defendant. After

the DSS employee left the room, the detectives returned, and Detective Sibbett told Defendant he was under arrest and would be charged. Detective Sibbett read Defendant his *Miranda* Rights. Defendant stated, "I'll talk to you but I want a lawyer with it and I don't have the money for one."

¶ 6     After Defendant stated he wanted "a lawyer with it," the detectives asked several questions to clarify Defendant's wishes. Detective Trogden told Defendant he did not see how talking with the detectives "could hurt [Defendant]," and "[he] want[ed] to make sure [Defendant was] willing to speak[.]" Detective Trogden then asked Defendant if he wished to speak without a lawyer present, if he wished to speak with the detectives, and if he wanted a lawyer present for questioning.

¶ 7     Detective Trogden asked Defendant to respond "yes or no" to whether Defendant would answer questions without an attorney present. Defendant answered in the affirmative and signed a waiver of his right to counsel. Defendant continued to speak with the detectives; however, Defendant did not expand on his earlier confession after his arrest. The video of the Defendant's interrogation by Detectives Sibbet and Trogden records the following exchange, in relevant part:

> **Detective Sibbet:** I've been told Detective Sibbet, who I understand to be a Detective, that he would like to question me—has also explained to me, and I understand that—I have the right to remain silent. That means I do not have to answer anything or answer any questions. Anything I can say can be used against me. I have the right to talk to a lawyer, and to have a lawyer present here with me that

will advise and help me during questioning. If I want to have a lawyer with me during questioning, but cannot afford one, a lawyer will be provided to me at no cost before our questioning. You good there?

**Defendant:** Yes, sir.

**Detective Sibbet:** I understand my rights as explained by Detective Sibbet. I now state that I do? Wish? [pause] to answer any questions at this time. Is that—would you like to talk to me?

**Defendant:** I mean I do but I wanna, I don't know what to do.

**Detective Trogden:** We can't make this decision for you.

**Detective Sibbet:** That's up to you, brother.

**Defendant:** There's just so much to think – I mean, am I going to be charged? I mean, I just, I just want to know that, can you tell me that?

**Detective Sibbet:** We don't set bonds, that's completely up to the court.

. . .

**Detective Trogden:** Before we can go any further in this discussing the whole matter, we need to know what you want to do as far as talking to us.

**Defendant:** I'll talk but I want to hire a lawyer with it. I mean, I don't have to money to get one. . . .

**Detective Trogden:** Well, the court is going to appoint an attorney to represent you, but just to be clear, you want to talk to us right now?

**Defendant:** I mean, yeah.

**Detective Trogden:** Okay.

**Defendant:** I mean, you'll help me, right?

**Detective Trogden:** It certainly can't hurt.

**Detective Trogden:** I think us understanding the truth about what happened will help.

**Defendant:** [Unintelligible]

**Detective Sibbet**: Well yeah, this is your opportunity.

**Detective Trogden:** Would it help if we read it to you again?

**Defendant:** No sir, I know what it says.

> **Detective Trogden:** Well, what we need you to do is initial where it says initial. . . .
>
> . . .
>
> **Detective Sibbet:** Just so we're clear, you do want to talk to us right now?
>
> **Defendant:** Yeah, I mean, I'll talk to y'all. But I know I need a lawyer.
>
> **Detective Trogden:** So are you, are you saying, you want to talk to us with a lawyer present, are you saying that you want to talk to us, are you saying that you don't walk to talk to us?
>
> **Defendant:** I mean I wanna talk, I wanna get this figured this out, so I can do whatever.
>
> **Detective Trogden:** Well, it's very important that we're clear right now as to whether or not you want an attorney. Do you want an attorney to be here with you now or are you saying that you're willing to talk to us without an attorney present? Like, we understand that you're going to get an attorney later to represent you for these charges.
>
> **Defendant:** So once I talk to y'all, I guess we'll go to the magistrate?
>
> **Detective Trogden:** Yes sir, that's correct, but to answer my question, is that a yes, or a no?
>
> **Defendant:** I mean, I'll talk to you.

¶ 8          Defendant moved to suppress any statements given in his interrogation and moved to dismiss his statutory rape charge. The trial court found Defendant's alleged request for counsel "equivocal" and "ambiguous," and the trial court found Detective Trogden's statements to be "a poor choice of words in light of all the circumstances" but not an inducement to sign the waiver. Both of Defendant's motions were denied. Defendant was convicted by a jury of statutory rape of a child 15 year or younger, but was found not guilty of second degree forcible rape. Defendant was sentenced as a

prior record level II to an active term of 240 to 348 months. Defendant gave oral

notice of appeal.

## II. Jurisdiction

This Court has jurisdiction to address Defendant's appeal pursuant to N.C.

Gen. Stat. § 7A-27(b) (2021) and N.C. Gen. Stat. § 15A-1444(a) (2021).

## III. Issues

The issues on appeal are whether the trial court erred in denying: (1)

Defendant's motion to suppress, or (2) Defendant's motion to dismiss.

## IV. Standards of Review

Our review of a trial court's denial of a motion to suppress is "strictly limited

to determining whether the trial judge's underlying findings of fact are supported by

competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge's ultimate conclusions of

law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

"This Court reviews the trial court's denial of a motion to dismiss *de novo*."

*State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon a defendant's

motion to dismiss for insufficient evidence, the question for the Court is whether

there is substantial evidence (1) of each essential element of the offense charged . . .

and (2) of defendant's being the perpetrator of such offense." *State v. Cox*, 367 N.C.

147, 150, 749 S.E.2d 271, 274 (2013) (internal quotations and citations omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "The evidence is to be considered in the light most favorable to the State, and the State is entitled to . . . every reasonable inference to be drawn therefrom." *Cox,* 367 N.C. at 150, 749 S.E.2d at 274 (internal quotation marks and citations omitted).

## IV. Analysis

### A. Motion to Suppress

¶ 13 Defendant first contends the evidence from his interrogation should be suppressed because he requested and did not receive counsel.

¶ 14 Under the Fifth Amendment, "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981). A defendant has the right to have an attorney present during custodial interrogation "[i]f . . . he indicates . . . he wishes to consult with an attorney before speaking." *Miranda v. Arizona,* 384 U.S. 436, 444-45 (1966).

¶ 15 A request for counsel must be unambiguous. *State v. Hyatt,* 355 N.C. 642, 655, 566 S.E.2d 61, 70 (2002) (citing *Davis v. United States,* 512 U.S. 452, 459 (1994)). A

request for counsel is unambiguous if the suspect "articulate[s] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *State v. Golphin,* 352 N.C. 364, 450, 533 S.E.2d 168, 225 (2000) (quoting *Davis,* 512 U.S. at 459). "[W]hen a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *State v. Taylor*, 247 N.C. App. 221, 226, 784 S.E.2d 224, 228 (2016) (quoting *Davis*, 512 U.S. at 461).

¶ 16        The right to presence of counsel during questioning applies only to custodial interrogation. *State v. Medlin*, 333 N.C. 280, 290, 426 S.E.2d 402, 407 (1993). "[T]he appropriate inquiry in determining whether a defendant is 'in custody' for purposes of *Miranda* is, based on the totality of the circumstances, whether there was a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *State v. Buchanan*, 353 N.C. 332, 339, 543 S.E.2d 823, 828 (2001). This inquiry is an objective determination. *Id.* at 341, 543 S.E.2d at 829.

¶ 17        Here, Defendant came to the Randolph County Sheriff's Office on his own volition. Prior to Defendant's confessing to sexual intercourse with Victim, Detective Trogden told Defendant he was not under arrest and could leave. Further, Defendant's freedom of movement was not restrained; he was allowed to use the restroom and make phone calls. Therefore, based on the totality of the circumstances,

competent evidence shows Defendant was not in custody when he confessed to having sexual intercourse with Victim. *See Cooke*, 306 N.C. at 134, 291 S.E.2d at 619; *Buchanan*, 353 N.C. at 339, 543 S.E.2d at 828. Defendant was not in custody when he first confessed and voluntarily answered the questions of the detectives. Therefore, an analysis of a request-for-counsel inquiry is inapplicable to Defendant's initial confession. *See Medlin*, 333 N.C. at 290, 426 S.E.2d at 407.

After Defendant's initial confession, the detectives arrested Defendant, read him his *Miranda* rights, and told him he would be charged. At this point, Defendant was in custody, as he had been formally arrested. *See Buchanan,* at 341, 543 S.E.2d at 829. Therefore, Defendant's statements made after his formal arrest are subject to a request-for-counsel inquiry, as these statements were made during a custodial interrogation. *See Medlin*, 333 N.C. at 290, 426 S.E.2d at 407.

After Defendant was arrested, he stated, "I'll talk but I want to hire a lawyer with it. I mean, I don't have to money to get one." It is unclear what Defendant meant by "I want a lawyer with it;" in light of his initial voluntary confession, "it" could have referred to the charge, the expected trial, or the interrogation. The detectives repeatedly tried to clarify Defendant's request, a practice labeled by this Court as "good police practice." *See Taylor*, 247 N.C. App. at 226, 784 S.E.2d at 228. Defendant then agreed to continue the interrogation without counsel and signed a waiver of counsel. In the factual context of this case, a reasonable police officer would not

understand Defendant's statement as an unambiguous request for counsel during interrogation. *See Golphin*, 352 N.C. at 450, 533 S.E.2d at 225.

¶ 20 In his brief, Defendant cites to *State v. Torres,* a case overruled on several grounds, to assert the detectives did not seek to clarify his comments; rather, Defendant asserts Detective Trogden attempted to dissuade him from obtaining counsel. *See State v. Torres*, 330 N.C. 517, 412 S.E.2d 20 (1992); *State v. Williams*, 366 N.C. 110, 114, 726 S.E.2d 161, 165 (2012). The trial court found one of Detective Trogden's comments to be a "poor choice of words," but was not an inducement to waive counsel. After making the comments, Detective Trogden asked Defendant if he wished to speak without a lawyer present, if he wished to speak with the detectives, and if he wanted a lawyer present for questioning. Detective Trogden asked several questions that were clarifying in nature, and only one that "was a poor choice or words."

¶ 21 Because Defendant's statement was ambiguous, and the questions that followed were intended to clarify the statement, competent evidence shows Defendant's right to counsel was not violated. *See Hyatt,* 355 N.C. at 655, 566 S.E.2d at 70; *Golphin,* 352 N.C. at 450, 533 S.E.2d at 225; *Taylor,* 247 N.C. App. at 226, 784 S.E.2d at 228; *Cooke*, 306 N.C. at 134, 291 S.E.2d at 619.

¶ 22 Accordingly, competent evidence exists to support the finding Defendant was not in custody until after his arrest. Any statement made prior to his arrest was valid

and not subject to a right-to-counsel analysis, and an analysis of Defendant's right to counsel is only applicable to his statements made after arrest. *See Taylor,* 247 N.C. App. at 226, 784 S.E.2d at 228; *Medlin,* 333 N.C. at 290, 426 S.E.2d at 407. The trial court's findings were supported by competent evidence to show Defendant's request was ambiguous at the time the request was made, and the detective's statements were an attempt to clarify Defendant's statements. Therefore, the statements made after Defendant's arrest were not subject to suppression. These findings supported the trial court's conclusion to deny Defendant's motion to suppress. *See Cooke*, 306 N.C. at 134, 291 S.E.2d at 619.

B. Motion to Dismiss

¶ 23     Defendant argues the trial court erred in denying his motion to dismiss because the dates alleged in the indictment varied from Victim's testimony, and the only evidence supporting the charge was imprecise testimony.

¶ 24     A defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse with another person who is fifteen years of age or younger, and the defendant is at least twelve years old and six years older than the other person. N.C. Gen. Stat. § 14-27.25(a) (2021). The elements of statutory rape are: (1) vaginal intercourse; (2) with a child who is fifteen years old or younger; and (3) the defendant is at least six years older than the child. *State v. Sprouse*, 217 N.C. App. 230, 240, 719 S.E.2d 234, 242 (2011).

¶ 25 An indictment must allege facts supporting each element of the offense charged. N.C. Gen. Stat. § 15A-924(a)(5) (2021). An indictment must also identify the date of offense. N.C. Gen. Stat. § 15A-924(a)(4). However, "[e]rror as to a date or its omission is not ground for dismissal of the charges or for reversal of a conviction if time was not of the essence with respect to the charge and the error or omission did not mislead the defendant to his prejudice." N.C. Gen. Stat. § 15A-924(a)(4).

¶ 26 The date given in an indictment for statutory rape "is not an essential element of the crime charged. . . ." *State v. Norris*, 101 N.C. App. 144, 151, 398 S.E.2d 652, 656 (1990). Particularly in cases involving the sexual abuse of children, courts are lenient concerning differences between dates alleged in the indictment and dates proven at trial. *State v. McGriff*, 151 N.C. App. 631, 637, 566 S.E.2d 776, 779 (2002). A victim's testimony of sexual intercourse is enough to uphold a trial court's denial of a motion to dismiss. *State v. Estes,* 99 N.C. App. 312, 316, 393 S.E.2d 158, 160 (1990); *State v. Bruce,* 315 N.C. 273, 281, 337 S.E.2d 510, 516 (1985) (stating a victim's testimony the defendant penetrated her is all that is "required to permit the jury to find beyond a reasonable doubt that the penetration had in fact occurred").

¶ 27 Here, Victim testified Defendant engaged in vaginal intercourse with her in 2016 when she was fourteen years old, and Defendant was nineteen years her elder. Defendant admitted to having vaginal intercourse with Victim in 2017, but it is

unclear whether these occasions were before or after Victim's fifteenth birthday. The date of the vaginal intercourse listed on the indictment was 2017.

¶ 28 Variance between the date on the indictment and Victim's testimony is not enough to justify a motion to dismiss, as the date given on an indictment for statutory rape is not an essential element of the crime, and courts are lenient concerning dates in cases involving the sexual abuse of minors. *See Norris*, 101 N.C. App. at 151, 398 S.E.2d at 656; *McGriff*, 151 N.C. App. at 637, 566 S.E.2d at 779. Therefore, Victim's testimony alleging vaginal intercourse in 2016 between her and Defendant—when Victim was fourteen and Defendant was nineteen years her elder—is sufficient to survive a motion to dismiss. *See Sprouse*, 217 N.C. App. at 240, 719 S.E.2d at 242; *Estes,* 99 N.C. App. at 316, 393 S.E.2d at 160.

¶ 29 Accordingly, the trial court properly denied Defendant's motion to dismiss, as relevant evidence existed to support a finding of each essential element of the offense charged and to maintain Defendant was the perpetrator. *See Cox*, 367 N.C. at 150, 749 S.E.2d at 274; *Smith*, 300 N.C. at 78-79, 265 S.E.2d at 169.

## VI. Conclusion

¶ 30 Competent evidence exists to support the finding Defendant was not in custody until after his arrest. An analysis of Defendant's right to counsel in the context of this case is only applicable to his confession made after his arrest. Therefore, any statement made prior to Defendant's arrest—including his confession—was valid and

not subject to a right-to-counsel analysis. Further, competent evidence shows Defendant's request, though custodial, was ambiguous, and therefore, did not trigger his right to counsel. *See Taylor,* 247 N.C. App. at 226, 784 S.E.2d at 228; *Medlin,* 333 N.C. at 290, 426 S.E.2d at 407; *Cooke,* 306 N.C. at 134, 291 S.E.2d at 619.

¶ 31 Lastly, the trial court properly denied Defendant's motion to dismiss the charge of statutory rape, as relevant evidence existed to support a finding of each essential element of the offense charged and to maintain Defendant was the perpetrator. *See Cox,* 367 N.C. at 150, 749 S.E.2d at 274; *Smith,* 300 N.C. at 78-79, 265 S.E.2d at 169. Accordingly, we find no error in the jury's verdict or in the judgment entered thereon.

NO ERROR

Judge TYSON concurs.

Judge ARROWOOD concurs in separate opinion.

ARROWOOD, Judge, concurring in result.

¶ 32    I concur in the result of the majority opinion affirming defendant's conviction, and further concur in the majority's analysis regarding defendant's initial confession and motion to dismiss.  I write separately, however, to address defendant's request for counsel during the custodial interrogation.  Although the majority concludes defendant's request was ambiguous and Detective Trogdon's questions were "good police practice" aimed at clarifying defendant's request, I believe defendant's request was sufficiently clear and unambiguous.

¶ 33    As the majority correctly notes, a defendant must make an unambiguous request for counsel which articulates their desire to have an attorney present at custodial interrogation, "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."  *See State v. Hyatt*, 355 N.C. 642, 655, 566 S.E.2d 61, 70 (2002) (citation omitted); *State v. Golphin,* 352 N.C. 364, 450, 533 S.E.2d 168, 225 (2000) (citations and quotation marks omitted).

> There are no "magic words" which must be uttered in order to invoke one's right to counsel.  The crucial determination is whether the person has indicated "in any manner" a desire to have the help of an attorney during custodial interrogation. . . . In deciding whether a person has invoked [their] right to counsel, therefore, a court must look not only at the words spoken, but the context in which they are spoken as well.

*State v. Barber*, 335 N.C. 120, 130, 436 S.E.2d 106, 111 (1993) (quoting *State v. Torres,*

330 N.C. 517, 528, 412 S.E.2d 20, 26 (1992)). "[A] statement either is such an assertion of the right to counsel or it is not." *Davis v. United States*, 512 U.S. 452, 459, 129 L. Ed. 2d 362, 371 (1994) (citation and quotation marks omitted). "If a criminal suspect invokes his right to counsel at any time during custodial interrogation, the interrogation must cease, and it cannot be resumed in the absence of an attorney unless the defendant initiates further discussion with the officers." *Hyatt*, 355 N.C. at 655, 566 S.E.2d at 70 (citations omitted).

¶ 34    In *Davis*, the United States Supreme Court held that a defendant's statement, "Maybe I should talk to a lawyer," made an hour and a half into his interrogation, was not a request for counsel. *Davis*, 512 U.S. at 462, 129 L. Ed. 2d at 373. In *Hyatt*, the North Carolina Supreme Court held that a defendant's statements were insufficient to constitute an invocation of his Fifth Amendment right to counsel because the statements "conveyed his father's wish that [defendant] get an attorney," but did not unambiguously convey defendant's own desire to receive the assistance of counsel. *Hyatt*, 355 N.C. at 656-57, 566 S.E.2d at 71. Similarly, in *State v. Dix*, this Court held that a defendant's statement, "I'm probably gonna have to have a lawyer," was not sufficiently unambiguous when taken out of context. *State v. Dix*, 194 N.C. App. 151, 156, 669 S.E.2d 25, 28 (2008), *writ denied, disc. review denied, appeal dismissed*, 363 N.C. 376, 679 S.E.2d 140 (2009).

¶ 35    In this case, once defendant was formally arrested, he initially expressed

uncertainty about what he wanted to do.  Detective Sibbett told defendant that the detectives "need to know what [defendant] want[s] to do as far as talking" with them, and defendant responded "I'll talk but I want to hire a lawyer with it.  I mean, I don't have the money to get one . . . ."  The following exchange ensued:

> Detective Trogdon:  Well, the court is going to appoint an attorney to represent you, okay, but just to be clear, you want to talk to us right now?
>
> Defendant:  I mean, yeah.
>
> Detective Trogdon:  Okay.
>
> Defendant:  I mean you'll help me right?
>
> Detective Trogdon:  It certainly can't hurt.

Detective Trogdon offered to read defendant his rights again, but defendant stated that he knew "what [the paper] says."  Detective Trogdon then directed defendant to sign, date and initial a form indicating that he waived his right to have counsel present for the interrogation.  After defendant returned the completed form, Detective Sibbett again asked, "[j]ust so we're clear, you do want to talk to us right now?"  Defendant responded, "[y]eah, I mean, I'll talk to y'all.  But I know I need a lawyer."

¶ 36        Detective Trogdon then asked, "are you saying that you want to talk to us with a lawyer present, or are you saying that you want to talk to us, or are you saying that you don't want to talk with us?"  Defendant responded, "I wanna talk, I want to get

this figured out so I can . . . do whatever, I mean . . . ." Detective Trogdon responded that it was "very important that we're clear right now as to whether or not you want an attorney. Do you want an attorney to be here with you now or are you saying that you're willing to talk to us without an attorney present?" Detective Trogdon noted that defendant was "going to get an attorney later to represent [him] for these charges." Defendant responded, "[s]o once I talk to y'all, I guess we'll go to the magistrate?" Detective Trogdon told defendant that was correct, and asked regarding his previous question, "is that a yes, or a no[,]" to which defendant responded, "I mean, I'll talk to you."

¶ 37        Although defendant initially expressed some willingness to speak with police, his statements were also clear that he wanted a lawyer before doing so. Rather than ceasing the interrogation at that point, Detective Trogdon stated that counsel would be appointed and framed defendant's statements as an indication that he "want[ed] to talk to" the detectives. When Detective Sibbett made a similar inquiry, defendant again stated "[b]ut I know I need a lawyer."

¶ 38        This case is distinguishable from the aforementioned cases where defendants stated that they "maybe" or "probably" needed to speak with a lawyer before custodial interrogation, or failed to articulate their own desires. Instead, defendant stated that he would talk to police, "*but I want a lawyer with it* . . . [and] I don't have the money to get one . . . ." (emphasis added). This was an unequivocal, unambiguous request

for counsel, combined with a statement that defendant could not afford to hire counsel. Once defendant told Detective Trogdon that he wanted a lawyer, the custodial interrogation should have ceased, and Detective Trogdon's statements, including stating how he did not see how talking to police "could hurt [defendant]," were improper. This is especially clear given defendant's later statement reasserting his desire for the assistance of counsel. Although defendant eventually did agree to talk with the detectives after a more detailed inquiry, the interrogation should have ceased prior to that point. As the United States Supreme Court held, a defendant's statement is either "an assertion of the right to counsel or it is not[,]" and in this case a reasonable police officer should have understood defendant's statement was an invocation of his right to counsel. *Davis*, 512 U.S. at 459, 129 L. Ed. 2d at 371 (citation and quotation marks omitted).

¶ 39    Nevertheless, because defendant's initial confession was made voluntarily and prior to custodial interrogation, the trial court's decision regarding the suppression of defendant's later statements amounts to harmless error. And although the trial court's error does not impact the result of this appeal, I believe it is important to set out the correct analysis rather than perpetuating the trial court's error.