McGEE, Chief Judge.
 

 *162
 
 Jeffery L. Dye, Jr. ("Defendant") appeals from judgment entered after a jury found him guilty of statutory rape. We find no error in Defendant's trial, but vacate the order imposing satellite-based monitoring for a period of thirty years due to a violation of
 
 N.C. Gen. Stat. § 14-208
 
 .40A.
 

 I.
 
 Background
 

 The State's evidence at trial tended to show the following: Defendant lived with his fiancée, Heather Townsend ("Townsend"), in a mobile home park in Mitchell County, North Carolina, in June 2013. Around that time, Defendant's cousin, B.G., began living with Misty Briggs ("Briggs"), B.G.'s aunt and Defendant's mother. At the times relevant to the present case, Defendant was twenty-three years old and B.G. was fourteen years old.
 

 Shortly after B.G. began living with Briggs, Defendant called to ask if B.G. would come to his mobile home to wash the dishes and babysit two of his children. When B.G. arrived, she assisted Defendant in washing the dishes and putting the children to bed. After the children were asleep, Defendant began telling B.G. about an argument he had with Townsend earlier in the day, and B.G. listened "because no one else was there for [Defendant]." While telling B.G. about the argument, Defendant asked B.G. "if [she] wanted to have sex with him, and [B.G.] told him no at first." As B.G. explained at trial:
 

 You know, [I told Defendant]... I don't want to have sex with you, this is wrong, and I was like if your girlfriend finds out this is not going to look good at all, you know.
 

 *163
 
 And so [Defendant] was undressing me, you know, like, he told-well, he told me to go put a bathing suit on and I was like sure, you know, okay. I put a bathing suit on and we were standing in the room, in his back bedroom, and yeah that's pretty much it.... [Defendant] undressed me from there, and then that's when [Defendant] raped me.
 

 Upon further questioning, B.G. stated Defendant had engaged in vaginal intercourse with her. The encounter continued for approximately an hour and a half, until Townsend returned to the mobile home. At that point, Defendant stopped having sex with B.G., gave her clothing to wear, and told her to not tell anyone because "[Defendant] didn't want to go into jail or ... get in any trouble with the law[.]" Despite Defendant's warning, B.G. testified she told Briggs that Defendant had raped her, but Briggs did not believe the accusation. B.G. eventually repeated the allegation to her school counselor in August 2013, when school was back in session.
 

 B.G. was examined by Dr. Kelly Rothe ("Dr. Rothe") on 27 March 2014. At trial, Dr. Rothe was accepted, without objection, as an expert in child sexual assault and in child medical examinations. Dr. Rothe began B.G.'s medical examination by asking B.G. a series of questions, and then performed a "head to toe" physical examination, including an internal vaginal examination. Dr. Rothe testified, without objection, that the examination revealed that the "posterior rim" of B.G.'s hymen was "thinned, which would have been consistent with a vaginal penetration." Elaborating on the examination, again without objection, Dr. Rothe testified that when she examined the posterior rim of B.G.'s hymen, it was "thinned," and "was, in fact, absent in what we call that 5 to 7 o'clock area, and that is the area that is most suspicious for vaginal penetration in child abuse." After discussing her findings, the following colloquy between Dr. Rothe and the prosecutor occurred:
 

 *739
 
 [Prosecutor:] ... [A]fter conducting the investigation, Dr. Roth[e], did you form any opinion regarding the possibility of sexual abuse?
 

 [Dr. Rothe:] Right, so, like I said that having an absent hymen in that section of posterior rim is very suspicious for sexual abuse. Just for your background, the only time that as a clinical provider we can say sexual abuse happened is if we see that hymen within three days of the sexual abuse, and then we also track it [sic] healing. That's why the nomenclature becomes difficult because the
 
 *164
 
 hymen, like the inside of the mouth, heals very quickly. But [B.G.'s] exam with an absent posterior rim was very suspicious for sexual abuse and with the disclosure of sexual abuse-
 

 Defendant's counsel then objected and argued that Dr. Rothe was able to "say ... that [her] findings support or are suspicious of, I think is what [Dr. Rothe] said, sexual abuse" but was not able to "give an opinion about what [B.G.] said to [Dr. Rothe]." After a protracted discussion with the prosecutor and Defendant's counsel, the trial court stated that Dr. Rothe "should not vouch for [B.G.'s] credibility."
 

 Upon further questioning, Dr. Rothe twice reiterated that the results of the examination were "suspicious for vaginal penetration" due to the absence of the posterior rim of B.G.'s hymen. On cross-examination, Dr. Rothe admitted the results of her examination of B.G. were "suspicious but not conclusive" for vaginal penetration and that, without a "baseline" examination of B.G. conducted before the alleged abuse, it was "hard to tell" whether the trauma observed in the examination was "normal to [B.G.] or not."
 

 Defendant was convicted of statutory rape and sentenced to a term of 254 to 365 months in prison. After sentencing Defendant, the trial court considered whether satellite-based monitoring ("SBM") was appropriate in an SBM hearing. The prosecutor presented the results of Defendant's Static-99 examination that indicated a risk assessment of four points, placing Defendant in a "Moderate-High" risk category. The trial court found that: (1) the offense was a sexually violent offense pursuant to
 
 N.C. Gen. Stat. § 14-208.6
 
 (5) ; (2) Defendant "has not been classified as a sexually violent predator;" (3) Defendant is not a recidivist; (4) the offense is not an aggravated offense; and (5) the offense did involve the physical, mental, or sexual abuse of a minor.
 

 Based upon these findings, the trial court ordered Defendant to register as a sex offender for a period of thirty years. The trial court then asked the prosecutor if the decision to order Defendant to enroll in satellite-based monitoring was "in [the trial court's] discretion ... [b]ecause of the score on the Static-99," and the prosecutor indicated that it was. After brief arguments from both the State and Defendant, the trial court ordered Defendant to enroll in satellite-based monitoring for the duration of the thirty year period that Defendant was to be registered as a sex offender. The trial court memorialized these findings as a written order ("the SBM order"). Defendant appeals.
 

 *165
 
 II.
 
 Analysis
 

 Defendant argues the trial court erred by: (1) allowing Dr. Rothe to improperly bolster B.G.'s credibility; (2) failing to make adequate findings of fact in the SBM order to support a determination that the highest possible level of supervision was required; and (3) failing to determine whether enrollment in satellite-based monitoring would violate Defendant's Fourth Amendment right to be free from unreasonable searches and seizures. Defendant also contends he received ineffective assistance of counsel because his trial counsel failed to object to, and enter written notice of appeal from, the SBM order.
 

 A.
 
 Dr. Rothe's Testimony
 

 Defendant argues the trial court allowed Dr. Rothe to improperly bolster B.G.'s credibility. Specifically, Defendant argues Dr. Rothe's testimony that B.G.'s hymen was "thin[ning] [or] absent in ... that 5 to 7 o'clock area," and that such a result was consistent with penetration and was "most suspicious for vaginal penetration in child abuse" improperly bolstered B.G.'s credibility.
 

 *740
 
 We disagree.
 
 [1]
 

 Pursuant to N.C. Gen. Stat. § 8C-702(a), a qualified expert may testify as to her opinion in her field of expertise if the testimony will assist the jury in understanding the evidence. A trial court's decision on the admissibility of an expert opinion "will not be reversed on appeal absent a showing of abuse of discretion."
 
 State v. McGrady
 
 ,
 
 368 N.C. 880
 
 , 893,
 
 787 S.E.2d 1
 
 , 11 (2016) (citations omitted). Generally, an expert may not testify about the credibility of a witness or state that it is the expert's belief the defendant is innocent or guilty.
 
 State v. Heath
 
 ,
 
 316 N.C. 337
 
 , 341-42,
 
 341 S.E.2d 565
 
 , 568 (1986) (holding that "an expert's expression of an opinion as to the defendant's guilt or innocence" is impermissible). Our Supreme Court has held that "[t]he question of whether a witness is telling the truth is a question of credibility and is a matter for the jury alone."
 
 State v. Solomon
 
 ,
 
 340 N.C. 212
 
 , 221,
 
 456 S.E.2d 778
 
 , 784,
 
 cert. denied
 
 ,
 
 516 U.S. 996
 
 ,
 
 116 S.Ct. 533
 
 ,
 
 133 L.Ed.2d 438
 
 (1995).
 

 In
 
 State v. Stancil
 
 ,
 
 355 N.C. 266
 
 ,
 
 559 S.E.2d 788
 
 (2002), our Supreme Court held, consistent with
 
 Solomon
 
 , that a "trial court should not admit expert opinion that sexual abuse has
 
 in fact
 
 occurred because, absent
 
 *166
 
 physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility."
 
 355 N.C. at 266-67
 
 ,
 
 559 S.E.2d at 789
 
 (emphasis in original) (citations omitted). However, "an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith."
 

 Id.
 

 (citations omitted).
 

 In the present case, and after being accepted without objection as an expert in child sexual assault and in child medical examinations, (
 
 T p 183-184
 
 ) Dr. Rothe explained the interview and physical examination she performed on B.G. Dr. Rothe then testified that the results of her examination-which revealed that B.G.'s hymen was "absent in ... that 5 to 7 o'clock area"-was "most suspicious for vaginal penetration in child abuse" and "very suspicious for sexual abuse." Dr. Rothe also testified about why the absence of the hymen in the posterior region is suspicious for vaginal penetration, explaining that "the posterior rim [of a hymen] [is] less elastic" than the anterior rim, such that "if there is vaginal penetration, it is the most likely affected" area of the hymen.
 

 Defendant directs this Court's attention to
 
 State v. Trent
 
 ,
 
 320 N.C. 610
 
 ,
 
 359 S.E.2d 463
 
 (1987) and
 
 State v. Parker
 
 ,
 
 111 N.C.App. 359
 
 ,
 
 432 S.E.2d 705
 
 (1993) in support of his position that Dr. Rothe's testimony was improper. The testimony of the experts in those cases, however, are materially different from Dr. Rothe's testimony in the present case. In
 
 Trent
 
 , the examining physician testified the victim's hymen was not intact, but otherwise the victim had no "lesions, tears, abrasions, bleeding or otherwise abnormal conditions."
 
 Id.
 
 at 613,
 
 359 S.E.2d at 465
 
 . Based on this evidence, and over the objection of the defendant, the physician testified it was his belief that the victim had in fact been sexually abused.
 

 Id.
 

 Similarly, in
 
 Parker
 
 , the examining physician testified "[i]t was [his] opinion that [the victim] had been sexually abused over a long period of time[.]"
 
 Parker
 
 ,
 
 111 N.C.App. at 366
 
 ,
 
 432 S.E.2d at 709-10
 
 (1993). This Court found that the testimony was based only on an interview the physician completed with the victim, and the fact that her hymenal ring was not intact.
 

 Id.
 

 In both cases, the reviewing court held that the expert was in no better position than the jury to determine whether the victim "was sexually abused," and therefore held it was erroneous for the trial court to admit the expert's diagnosis of sexual abuse.
 
 Trent
 
 ,
 
 320 N.C. at 614-15
 
 ,
 
 359 S.E.2d at
 
 465-66 ;
 
 Parker
 
 ,
 
 111 N.C.App. at 366
 
 ,
 
 432 S.E.2d at 709-10
 
 .
 

 In the present case, and unlike the experts in
 
 Trent
 
 and
 
 Parker
 
 , Dr. Rothe made no
 
 *741
 
 definitive diagnosis that B.G. was a victim of sexual
 
 *167
 
 abuse. Instead, Dr. Rothe detailed the examination she performed on B.G., and testified that the absence of B.G.'s hymen in the 5-7 o'clock area was "suspicious" for vaginal penetration and that "having an absent hymen in that section of posterior rim is very suspicious for sexual abuse." Dr. Rothe also appropriately cautioned that her findings, while suspicious for vaginal penetration and sexual abuse, were not conclusive; Dr. Rothe explained that "the only time ... a clinical provider ... can say sexual abuse happened is if we see that hymen within three days of the sexual abuse[.]" Since Dr. Rothe had not examined B.G. within three days of the alleged sexual abuse in this case, she explained that the "nomenclature becomes difficult." Dr. Rothe also readily conceded on cross-examination that the gap of eight months between the alleged abuse and the examination would "affect [Dr. Rothe's] ability to determine some results" of her examination; that there is "a lot of variation in what one would consider normal in what a hymen of a prepubescent or pubescent girl looks like" and the appearance of B.G.'s hymen could fall within that normal variation; and that conclusive results were not possible without a "baseline" examination conducted before the alleged abuse. Dr. Rothe further testified on cross-examination that the results of B.G.'s examination were "suspicious but not conclusive" for vaginal penetration.
 

 Given this testimony, it is clear that Dr. Rothe did not opine sexual abuse had in fact occurred, but rather explained that the results of her examination merely suggested that it had. Dr. Rothe's testimony that the results of B.G.'s examination were "suspicious" of vaginal penetration and sexual abuse is consistent with testimony this Court has found to be permissible, including an expert's opinion that the results of an examination are "consistent with" sexual abuse.
 
 See, e.g.
 
 ,
 
 State v. Goforth
 
 ,
 
 170 N.C.App. 584
 
 , 589-90,
 
 614 S.E.2d 313
 
 , 316-17 (2005) ;
 
 see also
 

 State v. Dick
 
 ,
 
 126 N.C.App. 312
 
 , 314-16,
 
 485 S.E.2d 88
 
 , 90 (1997) (finding no error in expert testimony that sexual abuse was "very likely" where there was physical evidence of the abuse, and distinguishing
 
 Trent
 
 and
 
 Parker
 
 , where there was no physical evidence of sexual abuse). Accordingly, we hold the trial court did not abuse its discretion in admitting the challenged testimony, as that testimony did not improperly bolster the credibility of B.G.
 

 B.
 
 SBM Hearing Procedure; Violation of
 
 N.C. Gen. Stat. § 14-208
 
 .40A
 

 Defendant contends the trial court erred by ordering him to enroll in the SBM program for a period of thirty years without sufficient findings of fact that Defendant required the highest possible level of supervision and monitoring, and that such a failure violated the statutory mandate of
 
 N.C. Gen. Stat. § 14-208
 
 .40B.
 
 Def. Br p 16-17.
 
 As Defendant concedes, he only gave
 
 *168
 
 oral notice of appeal at the conclusion of his sentencing hearing, and did not file a written notice of appeal from the trial court's SBM order. This Court has "interpreted SBM hearings and proceedings as civil, as opposed to criminal, actions, for purposes of appeal. Therefore, 'a defendant must give [written] notice of appeal pursuant to N.C. R. App. P. 3(a),' from an SBM proceeding."
 
 State v. Springle
 
 , --- N.C.App. ----, ----,
 
 781 S.E.2d 518
 
 , 520 (2016) (quoting
 
 State v. Brooks
 
 ,
 
 204 N.C.App. 193
 
 , 194-95,
 
 693 S.E.2d 204
 
 , 206 (2010) ). Failure to comply with N.C.R. App. P. 3 is a jurisdictional default "that prevents this Court from acting in any manner other than to dismiss the appeal."
 

 Id.
 

 (citation omitted).
 

 Recognizing the defect in his notice of appeal, Defendant has petitioned this Court for a writ of
 
 certiorari
 
 to consider his argument regarding,
 
 inter alia
 
 , the sufficiency of the findings of fact in the SBM order. A writ of
 
 certiorari
 
 "may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21(a)(1). In our discretion, we grant
 
 certiorari
 
 and consider Defendant's argument.
 

 In addition to the jurisdictional defect created by Defendant's failure to properly file a written notice of appeal, the State contends Defendant's argument regarding the sufficiency of the findings of fact in the SBM order is also unpreserved due to Defendant's
 
 *742
 
 failure to object when the SBM matter was heard, and contends this Court may only consider this argument by invoking N.C.R. App. P. 2. We disagree that invocation of N.C.R. App. P. 2 is necessary. N.C. Gen. Stat. § 15A-1446(d) provides that when a defendant asserts that a "sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law[,]" appellate review of such errors may be obtained regardless of whether an objection was made at trial. N.C. Gen. Stat. § 15A-1446(d)(18) (2015) ;
 
 see also
 

 State v. Hunt
 
 ,
 
 221 N.C.App. 48
 
 , 53,
 
 727 S.E.2d 584
 
 , 588-89 (2012).
 
 [2]
 
 Therefore, Defendant's argument was preserved, notwithstanding his failure to object in the trial court, and we proceed to the merits of Defendant's argument.
 

 While Defendant contends that this case is controlled by the sentencing procedures set forth in
 
 N.C. Gen. Stat. § 14-208
 
 .40B, we find that
 
 *169
 
 the procedures set forth in
 
 N.C. Gen. Stat. § 14-208
 
 .40A are applicable. This Court has held that N.C.G.S. § 14-208.40B applies "in cases in which the offender has been convicted of an applicable conviction and the trial court has not previously determined whether the offender must be required to enroll in SBM."
 
 State v. Kilby
 
 ,
 
 198 N.C.App. 363
 
 , 367,
 
 679 S.E.2d 430
 
 , 432-33 (2009) ;
 
 see also
 

 N.C. Gen. Stat. § 14-208
 
 .40B(a) (2015). N.C.G.S. § 14-208.40A, on the other hand, applies in cases in which the SBM determination was made "during the sentencing phase."
 
 N.C. Gen. Stat. § 14-208
 
 .40A(a) ;
 
 see also
 

 Kilby
 
 ,
 
 198 N.C.App. at 367
 
 ,
 
 679 S.E.2d at 432
 
 (noting that the procedure set forth in
 
 N.C. Gen. Stat. § 14-208
 
 .40A "applies in cases in which the district attorney has requested that the trial court consider SBM during the sentencing phase of an applicable conviction"). The SBM determination in the present case was made at the time Defendant was sentenced; therefore, N.C.G.S. § 14-208.40A controls.
 

 When an offender is convicted of a "reportable conviction" as that term is defined by
 
 N.C. Gen. Stat. § 14-208.6
 
 (4), N.C.G.S. § 14-208.40A(a) instructs that the district attorney
 

 shall present to the court any evidence that (i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.23 or G.S. 14-27.28, or (v) the offense involved the physical, mental, or sexual abuse of a minor.
 

 N.C. Gen. Stat. § 14-208
 
 .40A(a) (2015). Once this evidence has been presented, the trial court must determine "whether the offender's conviction places the offender in one of the categories described in G.S. 14-208.40(a), and if so, shall make a finding of fact of that determination, specifying" in which of the five categories listed in N.C.G.S. § 14-208.40A(a) the offense fits.
 
 N.C. Gen. Stat. § 14-208
 
 .40A(b). Then, and as relevant to the present case,
 

 [i]f the court finds that the offender committed an offense that involved the physical, mental, or sexual abuse of a minor, that the offense is not an aggravated offense or a violation of G.S. 14-27.23 or G.S. 14-27.28 and the offender is not a recidivist, the court shall order that the Division of Adult Correction do a risk assessment of the offender.
 

 N.C. Gen. Stat. § 14-208
 
 .40A(d) (2015). After receiving the risk assessment from the Division of Adult Correction, the trial court must "determine whether, based on the Division of Adult Correction's risk assessment,
 
 *170
 
 the offender requires the highest possible level of supervision and monitoring."
 
 N.C. Gen. Stat. § 14-208
 
 .40A(e) (2015). A "Moderate-High" risk assessment "still constitutes 'Moderate' for the purposes of our precedent,"
 
 State v. Smith
 
 ,
 
 240 N.C.App. 73
 
 , 75 n.1,
 
 769 S.E.2d 838
 
 , 840 n.1 (2015), and a "risk assessment of 'moderate,'
 
 without more
 
 , is insufficient to support the finding that a defendant requires the highest possible level of supervision and
 
 *743
 
 monitoring."
 
 State v. Green
 
 ,
 
 211 N.C.App. 599
 
 , 601,
 
 710 S.E.2d 292
 
 , 294 (2011) (emphasis in original). "If the court determines that the offender does require the highest possible level of supervision and monitoring, the court shall order the offender to enroll in a satellite-based monitoring program for a period of time to be specified by the court." N.C.G.S. § 14-208.40A(e).
 

 In the present case, Defendant was convicted of statutory rape in violation of
 
 N.C. Gen. Stat. § 14-27
 
 .7A(a), and the trial court found as fact that such conviction was one of the categories described in
 
 N.C. Gen. Stat. § 14-208.40
 
 (a).
 
 [3]
 
 The trial court further found as fact that: (1) Defendant had not been classified as a sexually violent predator under the procedure set out in
 
 N.C. Gen. Stat. § 14-208.20
 
 ; (2) Defendant was not a recidivist; (3) the offense was not an aggravated offense; and (4) the offense did involve the physical, mental, or sexual abuse of a minor. Given these findings, all undisputed, Defendant's offense falls within N.C.G.S. § 14-208.40A(d) and (e), that required the Division of Adult Correction to complete a risk assessment.
 

 The Static-99 in the present case revealed a risk assessment of four points, which translated into a "Moderate-High" risk category. Pursuant to
 
 Smith
 
 and
 
 Green
 
 , a "Moderate-High" risk category was insufficient to support a finding that the highest possible level of supervision and monitoring was required.
 
 Smith
 
 ,
 
 240 N.C.App. at
 
 75 n.1,
 
 769 S.E.2d at
 
 840 n.1 ;
 
 Green
 
 ,
 
 211 N.C.App. at 601
 
 ,
 
 710 S.E.2d at 294
 
 . Nevertheless, the trial court found that Defendant required the highest possible level of supervision and monitoring "based on the risk assessment of the Division of Adult Correction," and did not make any further findings
 
 *171
 
 of fact as to why SBM was appropriate. This finding was in error, and requires us to vacate the SBM order.
 
 [4]
 

 Relying on
 
 State v. Causby
 
 ,
 
 200 N.C.App. 113
 
 , 117,
 
 683 S.E.2d 262
 
 , 265 (2009), Defendant argues this Court should simply vacate the order without remand to the trial court for further findings of fact regarding the appropriate level of supervision. In
 
 Causby
 
 , the Court noted that the defendant's risk assessment was "moderate," and that the trial court's finding "that the defendant requires the highest possible level of supervision and monitoring" was inappropriate considering no additional findings of fact were made.
 
 Id.
 
 at 115-16,
 
 683 S.E.2d at 264
 
 . Relying on this Court's previous decision in
 
 State v. Kilby
 
 ,
 
 198 N.C.App. 363
 
 ,
 
 679 S.E.2d 430
 
 (2009), this Court considered whether remand for further findings of fact was appropriate:
 

 The State did not present evidence which could support a finding that "defendant requires the highest possible level of supervision and monitoring." The DOC assessment of defendant rated him as a moderate risk. The State's other evidence indicated that defendant was fully cooperating with his post release supervision, which might support a finding of a lower risk level, but not a higher one. As no evidence was presented which tends to indicate that defendant poses a greater than "moderate" risk or which would demonstrate that "defendant requires the highest possible level of supervision and monitoring[,]" we need not remand this matter to the trial court for additional findings of
 
 *744
 
 fact as requested by the State. Consequently, we reverse the trial court's order.
 

 Causby
 
 ,
 
 200 N.C.App. at 116
 
 ,
 
 683 S.E.2d at 264
 
 (quoting
 
 Kilby
 
 ,
 
 198 N.C.App. at 370
 
 ,
 
 679 S.E.2d at
 
 434 ).
 

 We find the present case distinguishable from
 
 Causby
 
 and
 
 Kilby
 
 . In the present case, the trial court assumed-and the prosecution agreed, incorrectly-that Defendant's risk assessment score on the Static-99 left the decision whether to impose satellite-based monitoring within the trial court's discretion. The prosecution nevertheless attempted to present additional evidence at the SBM hearing that the highest level of
 
 *172
 
 supervision and monitoring was required, but was not permitted by the trial court to do so:
 

 [Prosecutor]: Your Honor, the state would ask that [Defendant], we find that he does require the highest level of supervision. Your Honor, [Defendant] was a, I think it was four points which is moderate to high. In addition to that, [Defendant] is a person who has committed a very serious-
 

 THE COURT: I know that. Just argue to me about the time period.
 

 Because the State was not permitted to complete its argument regarding additional factors that made, in the State's view, the highest level of supervision and monitoring appropriate, we are unable to determine if that evidence "could support a finding that 'defendant requires the highest possible level of supervision and monitoring.' "
 
 Causby
 
 ,
 
 200 N.C.App. at 116
 
 ,
 
 683 S.E.2d at 264
 
 . Given that the State attempted to introduce additional evidence regarding whether the highest level of supervision and monitoring was required, but was unable to do so, we find the present case distinguishable from
 
 Causby
 
 and
 
 Kilby
 
 . We therefore remand to the trial court for further findings of fact as to whether the highest possible level of supervision and monitoring is appropriate.
 

 C.
 
 Defendant's Remaining Arguments
 

 In light of our determination that the SBM order must be vacated and remanded for a new hearing, we do not address Defendant's argument that the SBM order must also be vacated because enrollment in SBM violated Defendant's right to be free from unreasonable searches under the Fourth Amendment and the United States Supreme Court's decision in
 
 Grady v. North Carolina
 
 , --- U.S. ----,
 
 135 S.Ct. 1368
 
 ,
 
 191 L.Ed.2d 459
 
 (2015). We also dismiss Defendant's argument that he received ineffective assistance of counsel ("IAC"), as our allowance of
 
 certiorari
 
 and vacatur of the SBM order renders that argument moot.
 
 See
 

 In re K.C.
 
 ,
 
 226 N.C.App. 452
 
 , 463,
 
 742 S.E.2d 239
 
 , 246-47 (2013) (declaring an appellant's IAC claim premised on trial counsel's failure to properly preserve an argument for appellate review to be moot when the unpreserved argument was addressed and found to be meritorious, notwithstanding improper preservation).
 

 NO ERROR IN PART; DISMISSED IN PART; VACATED AND REMANDED IN PART.
 

 Judges HUNTER, JR. and DAVIS concur.
 

 [1]
 

 Defendant and the State disagree about whether this argument has been properly preserved for our full review, or whether plain error review is appropriate. Because we determine that Dr. Rothe's testimony did not improperly bolster B.G.'s credibility, we need not determine whether any error amounted to plain error.
 

 [2]
 

 While not controlling, we note that this Court has held, in a recent unpublished opinion, that N.C.G.S. § 15A-1446(d)(18) preserved a defendant's right to appeal an SBM order when the defendant failed to object at the SBM hearing.
 
 See
 

 State v. Egan
 
 , --- N.C.App. ----,----,
 
 782 S.E.2d 580
 
 ,
 
 2016 WL 607330
 
 , at *2, 2016 N.C.App. LEXIS 148, at *5-6 (2016) (unpublished).
 

 [3]
 

 One of the "categories described" in N.C.G.S. § 14-208.40(a) is "an offender [who] is convicted of a reportable conviction as defined by G.S. 14-208.6(4) [.]"
 
 N.C. Gen. Stat. § 14-208.40
 
 (a).
 
 N.C. Gen. Stat. § 14-208.6
 
 (4), in turn, defines "reportable conviction" as,
 
 inter alia
 
 , "a sexually violent offense."
 
 N.C. Gen. Stat. § 14-208.6
 
 (4). Sexually violent offense is, in turn, defined as including,
 
 inter alia
 
 , "a violation of ... G.S. 14-27.25(a)."
 
 N.C. Gen. Stat. § 14-208.6
 
 (5). N.C.G.S. § 14-27.7A, of which Defendant was convicted, was later recodified at
 
 N.C. Gen. Stat. § 14-27.25
 
 (a) in 2015.
 
 See
 
 2015 N.C. Sess. Laws ch. 181 § 7(a). Therefore, Defendant's conviction qualified as a reportable conviction.
 

 [4]
 

 Defendant asks this Court to "reverse" the SBM order rather than "vacate" it. While there is some support for reversal rather than vacatur in our precedent,
 
 see, e.g.
 
 ,
 
 Kilby
 
 ,
 
 198 N.C.App. 363
 
 , 370-71,
 
 679 S.E.2d 430
 
 , 434-35 (2009), in cases where this Court has chosen to remand the matter for further proceedings-which as explained below, we do here-this Court has chosen to "vacate" the SBM order.
 
 E.g.
 
 ,
 
 State v. Thomas
 
 ,
 
 225 N.C.App. 631
 
 , 634-35,
 
 741 S.E.2d 384
 
 , 387 (2013). Following that precedent, we do the same.