ZACHARY, Judge.
 

 *747
 

 *280
 
 Defendant Alexander DeJesus, a.k.a. Alexander Sigaru-Argueta, appeals from a judgment entered upon a bench verdict finding him guilty of three counts of statutory rape of a child. Defendant argues that the trial court erred in (1) denying his motion to dismiss two counts of statutory rape based on the
 
 corpus delicti
 
 rule, (2) admitting a purported
 
 *281
 
 copy of the victim's Honduran birth certificate, and (3) ordering that he enroll in lifetime satellite-based monitoring. We affirm the trial court's denial of Defendant's motion to dismiss, conclude that the trial court did not err in admitting the copy of the victim's Honduran birth certificate, and dismiss Defendant's appeal concerning the trial court's satellite-based monitoring order.
 

 Background
 

 Defendant was indicted on 23 January 2017 for three counts of statutory rape of a child, each with a listed offense date of "April 1, 2016 through May 31, 2016." Defendant waived his right to a jury trial, and a bench trial was thereafter held before the Honorable Carl R. Fox in Wake County Superior Court beginning on 2 April 2018.
 

 The evidence tended to show that Defendant was in a relationship with the victim's mother, and that Defendant, the victim, and the victim's mother were living together during the time in question. Sometime during the fall of 2016, the victim's middle school social worker Megan Vaughan noticed that the victim was visibly pregnant. The victim was in seventh grade at the time. After speaking with the victim, Ms. Vaughan filed an incident report with the Raleigh Police Department.
 

 When Detective Alex Doughty met with the victim on 1 December 2016, she identified Defendant as the father of her child. Detective Doughty took several photographs of the victim in order "to show her youth and the fact of her age being what it was. And, unfortunately, ... because of the stage of which her stomach appeared to be."
 

 Detective Doughty also interviewed Defendant on 1 December 2016. Detective Doughty testified that during the interview, he "confronted [Defendant] directly" about the paternity of the victim's child:
 

 [THE STATE:] What was his response to that?
 

 [DETECTIVE DOUGHTY:] I proposed it as an either/or question to him in regards to that I knew that he was the father of the child. What I was concerned about was whether or not that it was consensual or a forced event.
 

 ....
 

 Q. What did the defendant say to you about that?
 

 A. He had stated that he had never forced [the victim] and that everything that had occurred between the two of them was consensual.
 

 *282
 
 Q. Now, ... when he said everything that occurred, did you clarify with him what that meant?
 

 A. He defined that as that they had consensual sex on at least three occasions that he could account for.
 

 Q. And how, if at all, did he describe the type of sex that they had?
 

 A. Just vaginal penile. I went into clarity with him about the several methods in which sex could occur as well as any potential sex offenses involving cunnilingus, fellatio. Again, he denied that there was anything other than just vaginal sex.
 

 ....
 

 Q. ... You said that he said that it was three times?
 

 A. That's correct.
 

 Q. And do you recall anything that he said about those three different times?
 

 A. No. He only indicated that there was three times.
 

 Q. Did he-do you recall whether he said that they were separate three times?
 

 [DEFENSE COUNSEL]: Objection. Leading.
 

 THE COURT: Sustained.
 

 Q. How many different times did he confess to you?
 

 A. Three independent times over the course of, I believe, a month or two. It was maybe several months.
 

 *748
 
 The record indicates that the victim gave birth sometime between 21 January 2017 and 23 January 2017. Thereafter, DNA testing established that Defendant was indeed the father of her child.
 

 Defendant was charged with three counts of statutory rape of a child on the basis of his confession. Pursuant to
 
 N.C. Gen. Stat. § 14-27.23
 
 , the State was required to establish that the victim was "under the age of 13" and that Defendant was "at least 18 years of age" at the time of the offenses.
 
 N.C. Gen. Stat. § 14-27.23
 
 (a) (2016). Included in the evidence at trial was Defendant's admission that he was born on 14 October 1994, and that he was therefore 21 years of age during the time alleged in the indictment. The State submitted a purported copy of the victim's
 
 *283
 
 Honduran birth certificate in order to establish that the victim was 12 years old at the time of the incidents. Defendant objected to the admission of the copy of the victim's Honduran birth certificate on authentication and hearsay grounds, but the trial court overruled Defendant's objection and admitted the copy of the birth certificate into evidence.
 

 Neither Defendant, the victim, nor her mother testified at trial, and Defendant presented no evidence. At the close of the evidence, Defendant moved the trial court to dismiss two of the statutory rape charges, arguing that "it only takes one time to get pregnant. So where is the rest of the evidence as it applies to [the remaining two] counts .... [T]hat knocks two of the counts out ... just based on the evidence alone." Defendant noted that the only evidence supporting the remaining two charges was his extrajudicial confession, which Defendant maintained was insufficient under the
 
 corpus delicti
 
 rule.
 

 The trial court denied Defendant's motion to dismiss and found Defendant guilty of three counts of statutory rape of a child. The trial court sentenced Defendant to 300-420 months in the custody of the North Carolina Division of Adult Correction and ordered that he be enrolled in lifetime satellite-based monitoring upon his release. Defendant gave oral notice of appeal from the trial court's judgment in open court. Defendant did not provide written notice of appeal from the trial court's order enrolling him in satellite-based monitoring. However, on 23 August 2018, Defendant filed a petition for writ of certiorari requesting that this Court also review the trial court's satellite-based monitoring order.
 

 Discussion
 

 On appeal, Defendant argues that (1) the trial court erred in denying his motion to dismiss two of his three counts of statutory rape of a child under the
 
 corpus delicti
 
 rule; (2) the trial court erred in admitting the copy of the victim's Honduran birth certificate because it was not properly authenticated and constituted inadmissible hearsay; and (3) the trial court's satellite-based monitoring order must be vacated because the State presented no evidence that Defendant's enrollment would satisfy the Fourth Amendment.
 

 I. Motion to Dismiss
 

 Defendant first challenges the trial court's denial of his motion to dismiss two of his three statutory rape charges, which arose following Defendant's confession that he had vaginal intercourse with the victim on three separate occasions. Defendant recognizes that there was a "confirmatory circumstance to support one count of statutory rape,"
 

 *284
 
 that is, the victim's pregnancy. However, Defendant argues that "[t]here was no evidence corroborating the other two charges" aside from his extrajudicial confession, and therefore his motion to dismiss two counts of statutory rape should have been granted on the basis of the
 
 corpus delicti
 
 rule. We disagree.
 

 a. Standard of Review
 

 We review
 
 de novo
 
 the trial court's denial of a motion to dismiss.
 
 State v. Cox
 
 ,
 
 367 N.C. 147
 
 , 151,
 
 749 S.E.2d 271
 
 , 275 (2013).
 

 Upon a defendant's motion to dismiss for insufficient evidence, the question for the court is whether there is substantial evidence (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied. Substantial evidence is relevant evidence that a reasonable
 
 *749
 
 mind might accept as adequate to support a conclusion. The evidence is to be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom.
 

 Id.
 
 at 150,
 
 749 S.E.2d at 274
 
 (internal citations and ellipses omitted).
 

 Whether a defendant's extrajudicial confession may survive a motion to dismiss depends upon the satisfaction of the
 
 corpus delicti
 
 rule.
 
 Id.
 
 at 151,
 
 749 S.E.2d at 275
 
 .
 

 b. The
 
 Corpus Delicti
 
 Rule
 

 It is well settled that "an extrajudicial confession, standing alone, is not sufficient to sustain a conviction of a crime."
 
 State v. Parker
 
 ,
 
 315 N.C. 222
 
 , 229,
 
 337 S.E.2d 487
 
 , 491 (1985). Instead, where "the State relies solely on [a] defendant's confession, the State must meet the additional burden imposed by the
 
 corpus delicti
 
 rule,"
 
 State v. Sweat
 
 ,
 
 366 N.C. 79
 
 , 85,
 
 727 S.E.2d 691
 
 , 695 (2012), which requires some level of independent corroborative evidence in order "to ensure that a person is not convicted of a crime that was never committed."
 
 Parker
 
 ,
 
 315 N.C. at 229
 
 ,
 
 337 S.E.2d at 491
 
 (quotation marks omitted). "Literally, the phrase '
 
 corpus delicti
 
 ' means the 'body of the crime,' "
 
 id.
 
 at 231,
 
 337 S.E.2d at 492
 
 (citation omitted), and essentially "signifies merely the fact of the specific loss or injury sustained, e.g., death of a victim or burning of a house."
 
 Corpus Delicti
 
 , BLACK'S LAW DICTIONARY (10th ed. 2014).
 

 "The foundation for the
 
 corpus delicti
 
 rule lies historically in the convergence of" the following three policy factors:
 

 *285
 
 first, the shock which resulted from those rare but widely reported cases in which the "victim" returned alive after his supposed murderer had been convicted; and secondly, the general distrust of extrajudicial confessions stemming from the possibilities that a confession may have been erroneously reported or construed, involuntarily made, mistaken as to law or fact, or falsely volunteered by an insane or mentally disturbed individual[;] and, thirdly, the realization that sound law enforcement requires police investigations which extend beyond the words of the accused.
 

 Parker
 
 ,
 
 315 N.C. at 233
 
 ,
 
 337 S.E.2d at 493
 
 (citation and original alterations omitted).
 

 Under the traditional
 
 corpus delicti
 
 rule, the State is required to "present corroborative evidence, independent of the defendant's confession, tending to show that ... the injury or harm constituting the crime occurred."
 
 Cox
 
 ,
 
 367 N.C. at 151
 
 ,
 
 749 S.E.2d at 275
 
 (quotation marks omitted). "This traditional approach requires that the independent evidence touch or concern the
 
 corpus delicti
 
 -literally, the body of the crime, such as the dead body in a murder case."
 

 Id.
 

 (quotation marks omitted).
 

 In
 
 Parker
 
 , our Supreme Court examined the shortfalls of the traditional
 
 corpus delicti
 
 rule and concluded that reliance on an extrajudicial confession may be appropriate in certain circumstances, even though "independent proof of the commission of the crime-that is, the
 
 corpus delicti
 
 -is lacking."
 
 Id.
 
 at 152,
 
 749 S.E.2d at 276
 
 ,
 
 367 N.C. 147
 
 . The Supreme Court elected to supplement the traditional
 
 corpus delicti
 
 rule by adopting the more modern "trustworthiness" formulation of the rule, which focuses "on the reliability of a defendant's confession."
 
 State v. Messer
 
 , --- N.C. App. ----, ----,
 
 806 S.E.2d 315
 
 , 322 (2017). Under this approach, the State need not provide independent proof of the
 
 corpus delicti
 
 so long as there is "substantial independent evidence tending to establish the trustworthiness of the defendant's extrajudicial confession."
 
 Cox
 
 ,
 
 367 N.C. at 152
 
 ,
 
 749 S.E.2d at 276
 
 . Such substantial independent evidence may "includ[e] facts that tend to show the defendant had the opportunity to commit the crime," as well as other "
 
 strong
 
 corroboration of
 
 essential
 
 facts and circumstances embraced in the defendant's confession."
 
 Parker
 
 ,
 
 315 N.C. at 236
 
 ,
 
 337 S.E.2d at 495
 
 . Indeed, while noting that the newly adopted approach relaxed the standard of required corroboration, the
 
 Parker
 
 Court emphasized the need to "remain advertent to the reason for [the
 
 corpus delicti
 
 rule's] existence, that is, to protect against convictions for crimes that have not in fact occurred."
 

 Id.
 

 *750
 

 *286
 

 c. Application
 

 In the instant case, while the victim's pregnancy corroborated Defendant's confession as to one count of statutory rape of a child, the remaining two counts were supported solely by Defendant's extrajudicial confession. Accordingly, we must determine whether there was substantial independent evidence presented that tended to establish the trustworthiness of Defendant's confession that he engaged in vaginal intercourse with the victim on at least three separate occasions. We conclude that the victim's pregnancy, together with the evidence of Defendant's opportunity to commit these crimes and the circumstances surrounding his statement to detectives, provide sufficient corroboration to engender a belief in the overall truth of Defendant's confession.
 

 Initially, we note that there is no contention in the instant case that Defendant's extrajudicial confession was the product of deception or coercion.
 
 See
 

 id.
 
 at 234,
 
 337 S.E.2d at 494
 
 ("The second historical justification for the
 
 corpus delicti
 
 rule relates to the concern that the defendant's confession might have been coerced or induced by abusive police tactics. To a large extent, these concerns have been undercut by ... the development of ... doctrines relating to the voluntariness of confessions which limit the opportunity for overzealous law enforcement. These developments make it difficult to conceive what additional function the
 
 corpus delicti
 
 rule still serves in this context." (quotation marks omitted)). Defendant was not under arrest at the time of his interview, but rather traveled "on his own" to the police department in order to speak with Detective Doughty. Nor does the record otherwise indicate that Defendant's confession was involuntary or the product of coercion. Thus, the trustworthiness of Defendant's confession to at least three separate instances of vaginal intercourse with the victim is "bolstered by the evidence that [he] made a voluntary decision to confess" to these crimes.
 
 Cox
 
 ,
 
 367 N.C. at 154
 
 ,
 
 749 S.E.2d at 277
 
 .
 

 In addition, according to Detective Doughty, Defendant admitted that he engaged in vaginal intercourse with the victim "on at least three occasions
 
 that he could account for
 
 ," evincing Defendant's appreciation and understanding of the importance that his statement be accurate. (Emphasis added). The trustworthiness of Defendant's extrajudicial confession is further reinforced by the fact that Defendant had ample opportunity to commit these crimes, in that Defendant was living in the victim's home during the relevant time frame.
 
 See
 

 Parker
 
 ,
 
 315 N.C. at 236
 
 ,
 
 337 S.E.2d at 495
 
 ("[S]ubstantial independent evidence tending to establish [the] trustworthiness [of the accused's confession] includ[es] facts that tend to show the defendant had the opportunity to
 
 *287
 
 commit the crime."). Finally, and most significantly, the undisputed fact that Defendant fathered the victim's child unequivocally corroborated Defendant's statement that he had, in fact, engaged in vaginal intercourse with her. We are satisfied that the "strong corroboration" of Defendant's confession in this respect sufficiently establishes the trustworthiness of his concurrent statement regarding the number of instances that he had sexual intercourse with the victim.
 

 Accordingly, we conclude that there was substantial independent evidence to support the trustworthiness of Defendant's extrajudicial confession that he engaged in vaginal intercourse with the victim "on at least three occasions," and therefore, the
 
 corpus delicti
 
 rule is satisfied. Defendant's confession constitutes substantial evidence that he committed three counts of statutory rape against the victim, and thus the trial court did not err in denying Defendant's motion to dismiss.
 

 II. Foreign Birth Certificate
 

 Defendant next challenges the trial court's admission of the victim's Honduran birth certificate.
 

 To establish the victim's age pursuant to
 
 N.C. Gen. Stat. § 14-27.23
 
 (a), the State introduced a purported copy of the victim's Honduran birth certificate, which was obtained from the victim's school file (State's Exhibit 3). State's Exhibit 3 indicated that the victim was born on 15 September 2003, rendering her 12 years old when the alleged incidents occurred. Though not admitted for the purpose of establishing her age, Detective Doughty testified that the initial incident report
 
 *751
 
 also identified the victim's birth date as 15 September 2003. Detective Doughty opined that the victim "looked to be 10 or 11 years old" when he spoke with her on 1 December 2016. The photographs taken of the victim by Detective Doughty on the day of the interview were also admitted into evidence.
 

 Defendant objected to the admission of the copy of the victim's Honduran birth certificate on authentication and hearsay grounds. After an extensive colloquy, the trial court overruled Defendant's objections and admitted State's Exhibit 3 into evidence. On appeal, Defendant reasserts both grounds for his objection and contends that the admission of State's Exhibit 3 constitutes reversible error. We consider each argument in turn.
 

 a. Authentication
 

 Defendant first argues that the copy of the victim's Honduran birth certificate was not properly authenticated because (1) "the witness whom the State used to try and authenticate the document did not have
 
 *288
 
 the requisite knowledge to authenticate it under Rule 901; and (2) the document was not self-authenticating under Rule 902(3)." We conclude that the document was properly authenticated.
 

 "A trial court's determination as to whether a document has been sufficiently authenticated is reviewed
 
 de novo
 
 on appeal as a question of law."
 
 State v. Allen
 
 , --- N.C. App. ----, ----,
 
 812 S.E.2d 192
 
 , 195,
 
 disc. review denied
 
 ,
 
 371 N.C. 449
 
 ,
 
 817 S.E.2d 202
 
 (2018). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (quotation marks omitted).
 

 "Pursuant to Rule 901 of the North Carolina Rules of Evidence, every writing sought to be admitted must first be properly authenticated."
 
 State v. Ferguson
 
 ,
 
 145 N.C. App. 302
 
 , 312,
 
 549 S.E.2d 889
 
 , 896,
 
 disc. review denied
 
 ,
 
 354 N.C. 223
 
 ,
 
 554 S.E.2d 650
 
 (2001). While the Rules of Evidence provide a multitude of methods by which evidence may be properly authenticated,
 
 see generally
 
 N.C. Gen. Stat. § 8C-1, Rules 901(b), 902 (2017), the ultimate inquiry for the trial court is whether there exists "evidence sufficient to support a finding that the matter in question is what its proponent claims."
 

 Id.
 

 § 8C-1, Rule 901(a). Thus, "[i]t [is] not error for the trial court to admit ... evidence if it could reasonably determine that there was sufficient evidence to support a finding that the matter in question is what its proponent claims."
 
 State v. Crawley
 
 ,
 
 217 N.C. App. 509
 
 , 516,
 
 719 S.E.2d 632
 
 , 637 (2011) (quotation marks omitted),
 
 disc. review denied
 
 ,
 
 365 N.C. 553
 
 ,
 
 722 S.E.2d 607
 
 (2012).
 

 The trial court's function "is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the [finder of fact] could reasonably find that the evidence is authentic."
 
 State v. Ford
 
 ,
 
 245 N.C. App. 510
 
 , 519,
 
 782 S.E.2d 98
 
 , 105 (2016) (quotation marks omitted). "[A]
 
 prima facie
 
 showing, by direct or circumstantial evidence, ... is enough."
 
 State v. Mercer
 
 ,
 
 89 N.C. App. 714
 
 , 716,
 
 367 S.E.2d 9
 
 , 11 (1988). Once that threshold is met, it is for the factfinder to determine the appropriate weight and credibility that the evidence ought to be given.
 

 Id.
 

 Indeed, defendants are always "free to introduce any competent evidence relevant to the weight or credibility" of the evidence.
 
 Crawley
 
 ,
 
 217 N.C. App. at 516
 
 ,
 
 719 S.E.2d at 637
 
 .
 

 Here, other than the fact that the birth certificate offered into evidence was not an original, there is nothing in the record to indicate that State's Exhibit 3 was forged or otherwise inauthentic. The document appears to bear the signature and seal of the Honduran Municipal Civil Registrar, and Ms. Vaughan testified that the school personnel "wouldn't
 
 *289
 
 have made a copy [of the victim's birth certificate] unless we had the original." Moreover, Detective Doughty later testified that the incident report had "identified [the victim] as having a date of birth of September 15, 2003."
 
 [1]
 

 See
 

 *752
 

 Santora, McKay & Ranieri v. Franklin
 
 ,
 
 79 N.C. App. 585
 
 , 587,
 
 339 S.E.2d 799
 
 , 801 (1986) ("[I]t is not necessary that proof of the [authentication] be made before the introduction of the evidence ....").
 

 We conclude that the combination of these circumstances sufficiently established the requisite
 
 prima facie
 
 showing to allow the trial court, as factfinder, to reasonably determine that State's Exhibit 3 was an authentic copy of the victim's Honduran birth certificate. Accordingly, Defendant's argument on this basis is overruled.
 

 b. Hearsay
 

 Defendant also argues that State's Exhibit 3 "was inadmissible hearsay because it lacked sufficient 'trustworthiness' to satisfy Rule 803(8)." Again, we disagree.
 

 "This Court reviews a trial court's ruling on the admission of evidence over a party's hearsay objection
 
 de novo
 
 ."
 
 State v. Hicks
 
 ,
 
 243 N.C. App. 628
 
 , 638,
 
 777 S.E.2d 341
 
 , 348 (2015),
 
 disc. review denied
 
 ,
 
 368 N.C. 686
 
 ,
 
 781 S.E.2d 606
 
 (2016).
 

 " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c). "Hearsay is not admissible except as provided by statute ...."
 

 Id.
 

 § 8C-1, Rule 802. One such statutory exception is for "Public Records and Reports."
 

 Id.
 

 § 8C-1, Rule 803(8). Under this exception, a properly authenticated birth certificate is admissible "for purposes of proof of matters relevant to the information contained" therein.
 
 State v. Joyner
 
 ,
 
 295 N.C. 55
 
 , 62,
 
 243 S.E.2d 367
 
 , 372 (1978) ;
 
 see also
 
 N.C. Gen. Stat. § 8C-1, Rule 803(8). However, the trial court may decline to admit such evidence if "the sources of information or other circumstances indicate [a] lack of trustworthiness." N.C. Gen. Stat. § 8C-1, Rule 803(8). "Guarantees of trustworthiness are based on a consideration of the totality of the circumstances[,] but only those that surround the making of the statement and that render the [statement] particularly worthy of belief."
 
 State v. Little
 
 ,
 
 191 N.C. App. 655
 
 , 666,
 
 664 S.E.2d 432
 
 , 439,
 
 disc. review denied
 
 ,
 
 362 N.C. 685
 
 ,
 
 671 S.E.2d 326
 
 (2008).
 

 *290
 
 In the instant case, Defendant argues that "[t]here was simply no sound basis for determining that a photocopied document contained in a cumulative school file that was given to an unknown person by another unknown person established any measure of trustworthiness." However, as explained above, there are no circumstances in the instant case that would suggest that the birth date revealed on State's Exhibit 3 lacked trustworthiness. Moreover, there was additional evidence presented that supported the victim's age as provided in State's Exhibit 3, including the photographs that were taken of the victim at the time of her pregnancy, as well as Detective Doughty's testimony that the victim "looked to be 10 or 11 years old" at the time he interviewed her. In fact, in finding Defendant guilty of three counts of statutory rape of a child, the trial court stated: "I just can't-could not follow the defendant's argument given the fact that one, obviously, these photographs, this is a young child. I mean, this is not a 16 year old. This is not a child who has reached majority."
 

 Under these circumstances, we conclude that the statement of the victim's birth date contained in State's Exhibit 3, which was properly authenticated, was sufficiently trustworthy, and was therefore admissible as a public record. Accordingly, the trial court did not err by admitting State's Exhibit 3 into evidence.
 

 III. Satellite-Based Monitoring
 

 Lastly, Defendant argues that the trial court erred in ordering that he enroll in satellite-based monitoring for the remainder of his natural life upon his release from prison.
 

 Defendant did not file written notice of appeal from the trial court's order enrolling him in satellite-based monitoring, as required by Rule 3 of our Rules of Appellate Procedure.
 
 See
 

 State v. Dye
 
 , --- N.C. App. ----, ----,
 
 802 S.E.2d 737
 
 , 741 (2017) ("This Court has interpreted [satellite-based monitoring] hearings and proceedings as civil, as opposed to criminal, actions, for purposes of appeal.
 

 *753
 
 Therefore, a defendant must give written notice of appeal pursuant to N.C. R. App. P. 3(a), from a[ ] [satellite-based monitoring] proceeding." (quotation marks omitted)). Nevertheless, Defendant filed a petition for writ of certiorari asking this Court to review the trial court's conclusion that "Satellite Based Monitoring in this case is not an unreasonable search under law." Defendant argues that such a conclusion was erroneous "in the absence of any evidence from the State that lifetime [satellite-based monitoring] was a reasonable Fourth Amendment search." Indeed, the State presented no such evidence.
 

 *291
 
 However, in addition to his failure to file written notice of appeal, Defendant made no argument before the trial court at his sentencing hearing that the satellite-based monitoring constituted an unreasonable Fourth Amendment search. Thus, because "constitutional errors not raised by objection at trial are deemed waived on appeal,"
 
 State v. Bursell
 
 , --- N.C. App. ----, ----,
 
 813 S.E.2d 463
 
 , 465 (2018), Defendant essentially "asks this Court to take
 
 two
 
 extraordinary steps to reach the merits, first by issuing a writ of certiorari to hear [his] appeal, and then by invoking Rule 2 of the North Carolina Rules of Appellate Procedure to address his unpreserved constitutional argument."
 
 State v. Bishop
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 367
 
 , 369 (2017),
 
 disc. review denied
 
 ,
 
 370 N.C. 695
 
 ,
 
 811 S.E.2d 159
 
 (2018).
 

 Defendant, however, directs our attention to N.C. Gen. Stat. § 15A-1446 and the line of cases standing for the proposition that "when a defendant asserts that a 'sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law,' appellate review of such errors may be obtained regardless of whether an objection was made at trial."
 
 Dye
 
 , --- N.C. App. at ----,
 
 802 S.E.2d at 742
 
 (original alteration omitted) (quoting N.C. Gen. Stat. § 15A-1446(d)(18) );
 
 see
 

 id.
 
 at n.2 (noting also that "this Court has held, in a recent unpublished opinion, that N.C.G.S. § 15A-1446(d)(18) preserved a defendant's right to appeal a[ ] [satellite-based monitoring] order when the defendant failed to object at the [satellite-based monitoring] hearing" (citing
 
 State v. Egan
 
 ,
 
 245 N.C. App. 567
 
 ,
 
 782 S.E.2d 580
 
 (2016) (unpublished))). In other words, although satellite-based monitoring is a "civil, regulatory scheme,"
 
 State v. Hunt
 
 ,
 
 221 N.C. App. 48
 
 , 56,
 
 727 S.E.2d 584
 
 , 590,
 
 disc. review denied
 
 ,
 
 366 N.C. 390
 
 ,
 
 732 S.E.2d 581
 
 (2012), rather than a "criminal punishment,"
 
 id.
 
 at 57, 727 S.E.2d at 591, Defendant appears to suggest that his constitutional challenge thereto is nonetheless preserved by virtue of the error having occurred at his sentencing hearing. Thus, according to Defendant, this Court need only grant certiorari; his Fourth Amendment challenge is automatically preserved.
 

 Defendant's argument is unavailing. This Court is bound by the precedent of our Supreme Court, which quite broadly and plainly has held:
 

 Although [a] defendant's nonconstitutional sentencing issues are preserved without contemporaneous objection ... , constitutional issues are not. ... This is true even when a sentencing issue is intertwined with a constitutional issue. [If a] defendant failed to argue to the sentencing court that the sentence imposed violates the [United
 
 *292
 
 States Constitution], she may not raise that argument on appeal.
 

 State v. Meadows
 
 , --- N.C. ----, ----,
 
 821 S.E.2d 402
 
 , 407 (2018) (internal citations omitted);
 
 see also
 

 State v. Grady
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 18
 
 , 23 (2018) ("[A] defendant's Fourth Amendment [satellite-based monitoring] challenge must be properly asserted at the hearing in order to preserve the issue for appeal."). Accordingly, this Court cannot review Defendant's Fourth Amendment argument without invoking Rule 2.
 

 We emphasize that this Court "must be cautious in our use of Rule 2 not only because it is an extraordinary remedy intended solely to prevent manifest injustice, but also because 'inconsistent application' of Rule 2 itself leads to injustice when some similarly situated litigants are permitted to benefit from it but others are not."
 
 Bishop
 
 , --- N.C. App. at ----,
 
 805 S.E.2d at 370
 
 (quoting
 
 State v. Hart
 
 ,
 
 361 N.C. 309
 
 , 317,
 
 644 S.E.2d 201
 
 , 206 (2007) ). Here, because Defendant
 
 *754
 
 is no different from other defendants who failed to preserve a Fourth Amendment challenge to their enrollment in satellite-based monitoring below, we decline to invoke Rule 2.
 
 See, e.g.
 
 ,
 
 State v. Cozart
 
 , --- N.C. App. ----,
 
 817 S.E.2d 599
 
 (2018) ;
 
 Bishop
 
 , --- N.C. App. ----,
 
 805 S.E.2d 367
 
 . Consequently, we deny Defendant's petition for writ of certiorari.
 
 See
 

 State v. Grundler
 
 ,
 
 251 N.C. 177
 
 , 189,
 
 111 S.E.2d 1
 
 , 9 (1959) ("A petition for the writ must show merit ...."),
 
 cert. denied
 
 ,
 
 362 U.S. 917
 
 ,
 
 80 S.Ct. 670
 
 ,
 
 4 L.Ed. 2d 738
 
 (1960) ;
 
 Bishop
 
 , --- N.C. App. at ----,
 
 805 S.E.2d at 370
 
 .
 

 Conclusion
 

 Because there is substantial independent evidence tending to establish the trustworthiness of Defendant's extrajudicial confession to three counts of statutory rape of a child, the
 
 corpus delicti
 
 rule is satisfied, and we affirm the trial court's denial of Defendant's motion to dismiss. Furthermore, the trial court did not err in admitting into evidence the purported copy of the victim's Honduran birth certificate. Accordingly, we affirm the trial court's judgment entered upon Defendant's convictions for three counts of statutory rape of a child. We deny Defendant's petition for writ of certiorari and dismiss his appeal from the trial court's order enrolling him in satellite-based monitoring.
 

 AFFIRMED IN PART; DISMISSED IN PART.
 

 Judge HAMPSON concurs.
 

 Judge BERGER concurs in result only.
 

 [1]
 

 Although Detective Doughty's testimony was not admitted for the purpose of establishing the victim's age, his statements nevertheless corroborate the authenticity of the birth certificate that was maintained in the victim's school file.